UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
CITY OF ROSEVILLE EMPLOYEES'          :
RETIREMENT SYSTEM, et al.             :
                                      :
                    Plaintiffs,       :
                                      :    Civil Action No. 1:09-cv-08633-JGK
            vs.                       :
                                      :
ENERGY*SOLUTIONS* INC., R. STEVE      :
CREAMER, PHILIP O. STRAWBRIDGE, JEAN I. :
EVEREST, II, MARK C. MCBRIDE, ALAN E. :
GOLDBERG, JORDAN W. CLEMENTS, LANCE   :
L. HIRT, ROBERT D. LINDSAY, E. GAIL DE :
PLANQUE, ROBERT J.S. RORISTON, ANDREW :
S. WEINBERG, DAVID B. WINDER, CREDIT  :
SUISSE SECURITIES (USA) LLC, J.P. MORGAN :
SECURITIES INC., MORGAN STANLEY & CO. :
INC. and ENV HOLDINGS, LLC,           :
                                      :
                    Defendants.       :
                                      :
                                      :
-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

SIMPSON THACHER & BARTLETT LLP
Bruce D. Angiolillo
Jonathan K. Youngwood
Paul J. Sirkis
425 Lexington Avenue
New York, New York 10017-3954

PARR BROWN GEE & LOVELESS
Robert S. Clark (*Pro Hac Vice*)
185 South State Street, Suite 800
Salt Lake City, Utah 84111

*Attorneys for EnergySolutions, ENV, and Individual Defendants*

SHEARMAN & STERLING LLP
Adam S. Hakki
Daniel Lewis
599 Lexington Avenue
New York, New York 10022

*Attorneys for Underwriter Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

I.      Energy*Solutions*' Business ......................................................................................... 3

II.     Summary Of Plaintiffs' Allegations ............................................................................ 6

MOTION TO DISMISS STANDARD ..................................................................................... 9

ARGUMENT ........................................................................................................................... 10

I.      Plaintiffs' Section 10(b) Claim Should Be Dismissed Because The Complaint
        Fails To Allege A Material Misstatement Or Omission, Scienter, Or Loss
        Causation ...................................................................................................................... 10

        A.      The Complaint Fails To Allege With Particularity Any Material
                Misstatement Or Omission ................................................................................ 11

                1.      The Alleged Misstatements Are Inactionable Because They Are
                        Forward-Looking Statements Protected By The PSLRA Safe
                        Harbor And The Common Law "Bespeaks Caution" Doctrine .............. 11

                2.      None Of The Challenged Statements In The Complaint Contains A
                        Material Misstatement Or Omission ...................................................... 13

                        a.      The Complaint Fails To Allege Any Material Misstatement Or
                                Omission Regarding Opportunities In The Shut-Down Reactor
                                Market ...................................................................................... 14

                        b.      The Complaint Fails To Allege Any Material Misstatement Or
                                Omission Regarding The Zion Project ........................................ 17

                        c.      The Complaint Fails To Allege Any Material Misstatement Or
                                Omission Regarding The NRC Petition ...................................... 18

                        d.      The Complaint Fails To Allege Any Material Misstatement Or
                                Omission Regarding Macro-Economic Conditions .................... 20

        B.      The Complaint's Conclusory Allegations Do Not Give Rise To A Strong
                Inference Of Scienter ........................................................................................ 20

                1.      The Complaint's Improper Reliance On Group Pleading Fails To
                        Satisfy The Rigorous Pleading Standard For Scienter ........................... 21

2.  The Complaint's Conclusory Allegations Fail To Allege Motive And Opportunity........................................................................ 23

3.  The Complaint's Conclusory Allegations Fail To Raise An Inference Of Conscious Misbehavior Or Recklessness ......................... 25

    a.  The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding Opportunities In The Shut-Down Nuclear Reactor Market........................................................... 26

    b.  The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding The Zion Project .................................. 27

    c.  The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding The NRC Petition................................. 29

    d.  The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding Macro-Economic Conditions................ 30

4.  The Complaint's Reliance On Vague Statements From Unnamed Sources Not Shown To Have First-Hand Knowledge Of The Relevant Facts Further Undermines An Inference Of Scienter................ 30

C.  The Complaint Does Not Adequately Plead Loss Causation Because Plaintiffs' Alleged Loss Coincides With Other Occurrences ............................ 32

II.  Plaintiffs' Section 20(a) Claim Fails Because It Depends On The Faulty Section 10(b) Claim.......................................................................................... 33

III.  Plaintiffs' Securities Act Claims Fail .......................................................... 33

A.  Plaintiffs' Section 11 And 12(a)(2) Claims Fail Because The Complaint Fails To Identify Any Actionable Misstatement Or Omission ........................... 35

B.  The Registration Statements Contained All The Required Disclosure And Thus Did Not Violate Items 303, 503 Or 103..................................... 36

    1.  The Registration Statements Satisfy The Requirements Of Items 303 And 503 Because They Disclose All Known Trends, Events, Uncertainties, And Significant Risks........................................ 36

    2.  The Registration Statements Satisfy The Requirements Of Item 103 Because They Adequately Disclosed The Information Concerning The NRC Petition That Would Be Material To A Reasonable Investor.......................................................... 37

C.  Plaintiffs' Securities Act Claims Fail To Allege Loss Causation ........................ 38

IV.     The Section 15 Claim Fails Because It Depends On The Faulty Securities Act
        Claims ................................................................................................................. 39

CONCLUSION ............................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abbad v. Amman*, 112 F. App'x 97 (2d Cir. 2004) .................................................. 25

*Acito v. IMCERA Group. Inc.*, 47 F.3d 47 (2d Cir. 1995) .................................. 19, 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................ 9, 36

*ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007) .................................................................................... 15

*Backhaus v. Streammedia Commc'ns, Inc.*, No. 01-cv-4889(LMM/THK), 2002 WL 1870272 (S.D.N.Y. Aug. 14, 2002) ........................................................................................ 33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................9, 15, 35

*Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398 (S.D.N.Y. 2007)........................................................................ 15, 18

*Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323 (S.D.N.Y. 2009).............................................................................. 3

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................................................................... 3

*Chill v. Gen. Elec. Co.,* 101 F.3d 263 (2d Cir. 1996) ................................................ 23

*City of Sterling Heights Police & Fire Retirement System v. Vodafone Group Public Ltd. Co.*, 655 F. Supp. 2d 262 (S.D.N.Y. 2009)........................................................................ 15, 18

*Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957 (2d Cir. 1987) ...................................................................................... 36

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ........................................................................................ 3

*De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65 (2d Cir. 1996) ...................................................................................... 10

*Demaria v. Anderson*, 153 F. Supp. 2d 300 (S.D.N.Y. 2001) ....................................................................................... 39

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) ....................................................... 19

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) .......................................... 10, 32

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ................................ 20, 21, 26

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) ........................................................................................................ 20

*Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir. 2005) ...................................... 31

*First Nationwide Bank*, 27 F.3d 763 (2d Cir. 1994) ...................................... 32

*Fisher v. Offerman & Co., Inc.*, No. 95-cv-2566(JGK), 1996 WL 563141 (S.D.N.Y. Oct. 2, 1996) ......................................... 24

*Fort Worth Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218 (S.D.N.Y. 2009) ..................................................................................... 12, 32

*Freer v. Mayer*, 796 F. Supp. 89 (S.D.N.Y. 1992) ...................................... 37

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ...................... 23

*Garber v. Legg Mason, Inc.*, 347 F. App'x 665 (2d Cir. 2009) ...................................................................................................... 16, 19

*Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180 (S.D.N.Y. 1996) ...................................................................................... 24

*Glickman v. Alexander & Alexander Servs., Inc.*, No. 93-cv-7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) ...................... 23

*Higginbotham v. Baxter*, 495 F.3d 753 (7th Cir. 2007) ........................... 19, 30

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759 (2d Cir. 1991) ...................................................................... 18

*In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878 (8th Cir. 2009) ........................................................................................... 14

*In re Aegon N.V. Sec. Litig.*, No. 03-cv-0603(RNS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) .......................................... 12

*In re AFC Enterprises, Inc. Sec. Litig.*, 348 F. Supp. 2d 1363 (N.D. Ga. 2004) ...................................................................... 25

*In re AIG Advisor Group Secs. Litig.*, 309 F. App'x 495 (2d Cir. 2009) .................................................................................................... 34

*In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513 (S.D.N.Y. 2005) ............................................................................... 14

*In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171 (S.D.N.Y. 2003) ............................................................. 39

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................................... 22

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424 (S.D.N.Y. 2000) ...................................... 10

*In re Am. Express Co. Sec. Litig.*, No. 02-cv-5533(WHD), 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008) .................... 31

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004) .................................... 21

*In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008) ....................................................... 23, 25

*In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576 (S.D.N.Y. 2006) ................................................. 35

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............................................................................... 22

*In re Carter-Wallace Sec. Litig.*, 220 F.3d 36 (2d Cir. 2000)................................................................................ 26

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004)................................................................... 22

*In re Columbia Labs., Inc. Sec. Litig.*, 144 F. Supp. 2d 1362 (S.D. Fla. 2001) ......................................................... 12

*In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993) ................................................................... 13, 20

*In re Duane Reade Inc. Sec. Litig.*, No. 02-cv-6478 (NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) .................... 15

*In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187 (S.D.N.Y. 2008) ............................................................................... 31

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249 (S.D.N.Y. 2004) ................................................. 17

*In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510(CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) .................... 26

*In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d
261 (S.D.N.Y. 2009) ............................................................... 24

*In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97-cv-1865
(HB) 1998 WL 283286 (S.D.N.Y. June 1, 1998) ................... 25

*In re IAC/InterActiveCorp Sec. Litig.,* 478 F. Supp. 2d 574
(S.D.N.Y. 2007) ..................................................................... 13

*In re J.P. Morgan Chase*, 363 F. Supp. 2d 595 (S.D.N.Y.
2005) ....................................................................................... 35

*In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358
(E.D.N.Y. 2003) ..................................................................... 20

*In re Merrill Lynch & Co., Inc. Sec. Litig.*, 272 F. Supp. 2d
243 (S.D.N.Y 2003) ............................................................... 19

*In re Morgan Stanley and Van Kampen Mut. Fund Sec.
Litig.*, No. 03-cv-8208, 2006 U.S. Dist. LEXIS 20758
(S.D.N.Y. Apr. 14, 2006) ....................................................... 35

*In re NovaGold Resources Inc. Sec. Litig.*, 629 F. Supp. 2d
272 (S.D.N.Y. 2009) ............................................................... 23

*In re NTL Inc. Sec. Litig.*, No. 02-cv-3013(LAK), 2003 WL
21767948 (S.D.N.Y. July 31, 2003) ...................................... 14

*In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428 (S.D.N.Y.
2006) ....................................................................................... 24

*In re Prestige Brands Holding, Inc.*, No. 05-cv-
06924(CLB), 2006 WL 2147719 (S.D.N.Y. July 10,
2006) ....................................................................................... 24

*In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510
(S.D.N.Y. 2009) ............................................................... 21, 23

*In re Saba Enters.*, 421 B.R. 626 (Bankr. S.D.N.Y. 2009) ........... 3

*In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F.
Supp. 2d 579 (S.D.N.Y. 2006) ............................................... 38

*In re SeaChange Intern.*, No. 02-cv-12116(DPW), 2004
WL 240317 (D. Mass. Feb. 6, 2004) ..................................... 38

*In re Security Capital Assur. Ltd. Sec. Litig.*, No. 07-cv-
11086(DAB), 2010 WL 1372688 (S.D.N.Y. March 31,
2010) ....................................................................................... 38

*In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365
    (S.D.N.Y. 2007) ......................................................................................... 12

*In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247
    (S.D.N.Y. 2008) ........................................................................................... 9

*In re Veeco Instruments Sec. Litig.*, 235 F.R.D. 220
    (S.D.N.Y. 2006) ......................................................................................... 23

*In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d
    158 (S.D.N.Y. 2003) .................................................................................. 10

*In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385
    (S.D.N.Y. 2004) ......................................................................................... 15

*In Teamsters Allied Benefit Funds v. McGraw*, No. 09-cv-
    140(PGG), 2010 WL 882883 (S.D.N.Y. Mar. 11, 2010) ....................... 23

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw
    Group, Inc.*, 537 F.3d 527 (5th Cir. 2008) ............................................. 32

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ............................................ 25, 26

*Kinsey v. Cendant Corp.*, No. 04-cv-0582(RWS), 2005 WL
    1907678 (S.D.N.Y. Aug. 10, 2005) ......................................................... 23

*Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th Cir. 2009) ......................... 27, 28, 31

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir.
    1994) ........................................................................................................... 29

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) .............................. 3

*Landmen Partners Inc. v. Blackstone*, 659 F. Supp. 2d 532
    (S.D.N.Y. 2009) ......................................................................................... 20

*Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161 (2d Cir.
    2005) ...................................................................................................... 11, 32

*Ley v. Visteon Corp.*, 543 F.3d 801 (6th Cir. 2008) ..................................... 31

*Lowinger v. Pzena Investment Mgmt.*, 341 F. App'x 717
    (2d Cir. 2009) ............................................................................................ 34

*Miller v. Lazard, Ltd.*, 473 F. Supp. 571 (S.D.N.Y. 2007) ........................ 34

*Mizzaro* v. *Home Depot, Inc.*, 544 F.3d 1230 (11th Cir.
    2008) ........................................................................................................... 21

*New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.,* 537 F.3d 35 (1st Cir. 2008)..................................... 31

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .............................19, 24, 26

*Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996) .............................................................................................. 34

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662 (S.D.N.Y. 2008) ............................................... 9

*Papasan v. Allain*, 478 U.S. 265 (1986) ......................................... 10

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999)................... 24

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, No. 08-cv-8143(WHP), 2010 WL 961596 (S.D.N.Y. Mar. 17, 2010) .................................................................................... 23

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ................... 13, 27, 33, 35

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)............................... 3

*Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir. 1994) ...................................................................................... 27, 29

*Slayton v. Am. Express*, 604 F.3d 758 (2d Cir. 2010) ................26, 27, 29

*Stair v. Calhoun*, No. 07-cv-03906 (JFB)(ETB), 2009 WL 792189 (E.D.N.Y. Mar. 23, 2009) ............................................ 21

*Teachers' Ret. Sys. of L.A. v. Hunter*, 477 F.3d 162 (4th Cir. 2007) .................................................................................... 32

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................................................10, 11, 21, 30

*Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509 (7th Cir. 1989) ................................................................................ 20, 38

*Yu v. State St. Corp.*, 686 F. Supp. 2d 369 (S.D.N.Y. 2010) .................. 17

## Statutes

10 C.F.R. § 50.75 (2008) ........................................................................... 3

17 C.F.R. § 229.103 (Regulation S-K)...........................................36, 37, 38

17 C.F.R. § 229.303 (Regulation S-K) .............................................. 36, 37

17 C.F.R. § 229.503 (Regulation S-K) ................................................................ 36, 37

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4
   *et seq.* (2008) ........................................................................................... passim

The Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ....................................... passim

The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et
   seq.* ......................................................................................................... passim

Defendants Energy*Solutions*, Inc. ("Energy*Solutions*" or the "Company"), ENV

Holdings, LLC ("ENV"), R. Steve Creamer, Philip O. Strawbridge, Jean I. Everest, II, Mark C.

McBride, Alan E. Goldberg, Jordan W. Clements, Lance L. Hirt, Robert D. Lindsay, E. Gail De

Planque, Robert J.S. Roriston, Andrew S. Weinberg, David B. Winder (collectively, the

"Individual Defendants" and, together with Energy*Solutions* and ENV, the "Energy*Solutions*

Defendants"), Credit Suisse Securities (USA) LLC, J.P. Morgan Securities Inc. and Morgan

Stanley & Co. Inc. (collectively the "Underwriter Defendants") respectfully submit this

memorandum of law, the Declaration of Jonathan K. Youngwood, dated June 18, 2010

("Youngwood Declaration") and the exhibits annexed thereto,[1] in support of their motion to

dismiss the Consolidated Amended Complaint dated April 20, 2010 (the "Complaint"; cited

herein as "¶ __") pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6), and the Private

Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq*. (2008) (the "PSLRA"), on the

ground that Plaintiffs have failed to allege any viable securities claims.

## PRELIMINARY STATEMENT

The Complaint theorizes that Energy*Solutions* misled the market by failing to disclose,

beginning on November 14, 2007, that its business plans would not be as successful as hoped.

The Complaint alleges that Energy*Solutions* "revealed" the truth to the market on October 14,

2008, when the Company announced lowered forecasted earnings because two of its business

initiatives were impacted negatively by the deteriorating economic conditions unfolding at the

height of the financial crisis.  Not surprisingly, the price of Energy*Solutions* stock declined

following this announcement.  But a declining stock price is not a securities law violation, and

---

[1]    References to "Ex. __" herein refer to the exhibits attached to the Youngwood
Declaration.

the securities laws are not investment insurance.  Stripped of rhetoric, this is a classic "fraud-by-hindsight" case.  Such complaints are dismissed routinely by this Court.

The Complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  None of these claims is well pleaded:

*First*, the allegedly misleading statements all were forward-looking and are protected by both the "bespeaks caution" doctrine and the PSLRA safe harbor for forward-looking statements.

*Second*, the Complaint fails to allege any misrepresentation or omission of a material fact.

*Third*, the Complaint is devoid of facts sufficient for the Court to draw the required strong inference of scienter, a necessary element of Plaintiffs' Section 10(b) claim.

*Fourth*, regarding loss causation, vague and conclusory allegations are no substitute for pleading facts demonstrating that Plaintiffs' losses were caused by the allegedly misleading statements at issue.

The Court should dismiss the Complaint in its entirety and with prejudice.

## STATEMENT OF FACTS[2]

### I.    Energy*Solutions*' Business

Energy*Solutions* is a nuclear services company with operations throughout the U.S.,

Canada, the United Kingdom and other countries.  Ex. A at 1.  Energy*Solutions* provides

integrated services and solutions to the nuclear industry, the U.S. government, the government of

the United Kingdom, hospitals and research facilities.  *Id.*  The Company's services include

engineering, operation of nuclear reactors, in-plant support services, spent nuclear fuel

management, decontamination and decommissioning, logistics, transportation, processing and

disposal.  *Id.*  Energy*Solutions* also owns and operates strategic facilities for the safe processing

and disposal of radioactive materials.  *Id.*

The License Stewardship Program

In 2007, Energy*Solutions* announced its "License Stewardship Program," an innovative

approach to decommissioning services that would allow Energy*Solutions* to conduct

decommissioning and site restoration work as both an owner and licensee.[3]  *Id.* at 4; ¶119.

---

[2]    Defendants accept, as they must, Plaintiffs' factual allegations as true for purposes of this motion except where those allegations are contradicted by securities filings or by documents incorporated in the Complaint.  In addition to well-pleaded factual allegations, the Court also may consider the following in assessing the sufficiency of the Complaint: (1) documents incorporated by reference in the Complaint; (2) documents on which Plaintiffs relied in drafting the Complaint; (3) facts of which judicial notice may be taken; and (4) matters of public record, such as filings with a court or government agency.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991); *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 328 (S.D.N.Y. 2009); *In re Saba Enters.*, 421 B.R. 626, 638 (Bankr. S.D.N.Y. 2009).

[3]    A nuclear power plant must be decommissioned and demolished at the end of its life so that the site can be restored for reuse.  Since 1988, the U.S. Nuclear Regulatory Commission has required all U.S. nuclear power plant owners to set money aside in trust funds while the plants are still operating to finance these costs.  To comply, nuclear power plant owners collect fees from their ratepayers during the operating life of the facility and deposit them into decommissioning trust funds.  10 C.F.R. § 50.75 (2008).

Under the License Stewardship Program, Energy*Solutions* would contract with the owner of a non-operating nuclear power plant to acquire title to the buildings, facilities and equipment of the plant. *Id.* Upon the transfer of ownership, Energy*Solutions* would be eligible to acquire its own license from the U.S. Nuclear Regulatory Commission ("NRC") to decommission the plant and fund that work within the plant's decommissioning trust funds. *Id.* Energy*Solutions*' technology, expertise and assets would facilitate decommissioning faster and at a lower cost than the owner could decommission the plant. *Id.*

The Zion Project

In December 2007, Energy*Solutions* entered into a contract with Exelon Generation Company, LLC ("Exelon") whereby Energy*Solutions* would decommission Exelon's non-operating nuclear plant near Zion, Illinois on an accelerated schedule (the "Zion Project"). ¶81. This contract marked the launch of the License Stewardship Program. ¶184. The Zion Project agreement was conditioned on Energy*Solutions* delivering a $200 million letter of credit to cover potential shortfalls in the Zion Trust Fund – a fund established to pay decommissioning costs. Ex. C at 2-3.

In February 2009, the NRC approved the transfer of the Zion license to Zion*Solutions*, an Energy*Solutions* subsidiary created for the Zion Project. Ex. N. The NRC concluded that "based on the staff review of the forecasted expenses estimated by Zion*Solutions*, the available decommissioning funds, including the $200 million letter of credit, the economic value for disposal rights, and an independent estimate of decommissioning funding, the staff determined that Zion*Solutions* is financially qualified to hold the licenses as proposed for Zion." *Id.* at 5. Moreover, the NRC stated that its "staff is satisfied with the current funding status." *Id.* at 6.

The NRC Petition Regarding The Use Of
Decommissioning Funds In Advance Of Plant Shut-Down

In May 2007, Energy*Solutions* submitted a rulemaking petition to the NRC to allow the

use of funds in decommissioning trust funds for the transportation and disposal of large

radioactive components at U.S. nuclear sites still in operation (the "NRC Petition" or "Petition").

Ex R; ¶184.  Under existing NRC rules, the disposal of large radioactive components cannot be

funded by decommissioning trust funds prior to shut-down absent an exemption from the NRC.

A rule change by the NRC would allow Energy*Solutions* to provide decommissioning services

on an accelerated schedule.  Neither the License Stewardship Program, nor the Zion Project, was

dependent on approval of the NRC Petition.

The October 14, 2008 Announcement

On October 14, 2008, amidst the cascading global economic collapse, Energy*Solutions*

announced that the "financial crisis that is impacting the United States and world markets will

delay Energy*Solutions*' ability to accelerate the decommissioning" of the Zion nuclear power

station assets "until after the financial markets stabilize".  Ex. L at 1; ¶146.  Despite the delay,

both Energy*Solutions* and Exelon stated that they remained committed to the Zion Project.  *Id.*

In the same press release, the Company also disclosed that the NRC had rejected the rulemaking

Petition.  *Id.*  Despite the rejection, the NRC indicated "that it would consider, on a case-by-case

basis, exemptions from its guidance against using decommissioning trust funds for disposing of

large components . . . that it believes that the early removal and disposal of large components is

important and [that] it will continue to work on alternative methods to accomplish this

objective."  *Id.*

## II.    Summary Of Plaintiffs' Allegations

On November 14, 2007, Energy*Solutions* conducted its initial public offering ("IPO")

pursuant to a prospectus and registration statement (the "IPO Registration Statement" or "IPO

Reg. St."). ¶56. On July 24, 2008, Energy*Solutions* conducted a secondary offering (the "2008

Offering") pursuant to a prospectus and registration statement (the "2008 Registration

Statement" or "2008 Reg. St."). ¶62. Plaintiffs claim that the IPO Registration Statement and

2008 Registration Statement (the "Registration Statements") contained misstatements and

omissions of material fact in violation of Sections 11, 12(a)(2) and 15 of the Securities Act, and

that the Individual Defendants, Energy*Solutions*, and ENV made materially false and misleading

statements between November 14, 2007 and October 14, 2008 (the "Class Period") in violation

of Sections 10(b) and 20(a) of the Exchange Act.[4] ¶¶151-172; 253-267. The Complaint purports

to state claims on behalf of a class of individuals who allegedly purchased Energy*Solutions*

shares pursuant to the IPO and July 2008 Offering and during the Class Period.

Plaintiffs allege that investors were misled about four things:

1.    <u>Opportunities in the Shut-down Nuclear Reactor Market</u> – The Complaint alleges

that Energy*Solutions* misrepresented its opportunities in the shut-down nuclear reactor market

because it failed to disclose that decommissioning trust funds had "declined" and that certain

nuclear reactor owners were experiencing "shortfalls" in their trust funds. ¶¶121, 126, 185, 191,

196, 199, 205, 208, 210, 221, 223, 225.

The Company actually warned investors that decommissioning trust funds are subject to

decline and could become insufficient to fund projects under the License Stewardship Program:

---

[4]    The Complaint pleads only Securities Act claims against the Underwriter Defendants.
The Underwriter Defendants are not named in the Exchange Act claims.

§   [I]f a plant's decommissioning trust fund has decreased or failed to grow, the fund may not be large enough to make license stewardship economically feasible.  Ex. A at 20 (IPO Reg. St.); Ex. B at 20 (2008 Reg. St.); Ex. D at 31 (Energy*Solutions*' 2007 Form 10-K, hereinafter "2007 10-K")).

§   These trust fund balances are subject to market risk and may also fluctuate according to ratepayer contributions and consumption.  Ex. B at 75 (2008 Reg. St.).

The Complaint also alleges that Energy*Solutions* misrepresented its opportunities in the shut-down nuclear reactor market because it failed to disclose that certain shut-down nuclear reactor owners were not suitable business prospects.  According to the Complaint, some of these shut-down nuclear reactor owners could do their own decommissioning services and others were not likely to begin decommissioning activities in the near term.  ¶¶121, 126, 185, 191, 196, 199, 205, 208, 210, 221, 223, 225.

In fact, Energy*Solutions* warned investors of these dual risks:

§   Some [owners] have the ability to store radioactive materials generated by their operations on-site, instead of contracting with an outside service provider, such as [Energy*Solutions*] . . .  Ex. A at 20 (IPO Reg. St.); Ex. B at 19 (2008 Reg. St.); Ex. D at 30 (2007 10-K).

§   Owners and operators of shut-down nuclear reactors have the option of maintaining their reactors in SAFSTOR or monitored storage indefinitely, thus allowing their decommissioning trust funds to grow *until such time in the future that they decide to pursue a D&D program*.  Ex. A at 80 (IPO Reg. St.); Ex. B at 74 (2008 Reg. St.) (emphasis added).

§   We have established a relationship with some of the owners of these reactors and believe that we are well-positioned to pursue these contracts *when they are made available*.  Ex. A at 81 (IPO Reg. St.) (emphasis added).

2.    The Zion Project – The Complaint alleges that the Company's disclosures regarding the Zion Project were false and misleading because the Company failed to disclose that the decommissioning trust fund for the Zion Project (the "Zion Trust Fund") had "declined" during 2008 and was "inadequate" to cover expenses.  ¶¶128, 186, 191, 193, 196, 199, 205, 208, 210, 218, 221, 223, 225.

Energy*Solutions* in fact warned investors that decommissioning trust funds are subject to decline and could become insufficient to fund projects under the License Stewardship Program. Ex. A at 20 (IPO Reg. St.); Ex. B at 75 (2008 Reg. St.); Ex. D at 31 (2007 10-K).  Moreover, the Complaint does not allege that Energy*Solutions* said anything about the status or value of Zion Trust Fund that was misleading at the time the statement was made.

      3.     <u>The NRC Petition</u> – The Complaint alleges that the Company's disclosures regarding the NRC Petition were false and misleading because the Company failed to disclose that the NRC was "unlikely" to grant the Company's Petition based on prior NRC rejections. ¶¶124, 131, 187, 191, 193, 196, 199, 202, 205, 208, 210, 221, 227.

Energy*Solutions* in fact warned investors that the NRC could deny the Petition, and that such a rejection could have an adverse impact on Energy*Solutions*' business:

§    [F]ailure of the [NRC] proposal to be adopted could have an adverse impact on the prospects for our Commercial and LP&D segments.  Ex. A at 20 (IPO Reg. St.); Ex. B at 20 (2008 Reg. St.); Ex. D at 30 (2007 10-K).

§    Our quarterly operating results may fluctuate significantly because of a number of factors, many of which are outside our control, including…the adoption of a proposed NRC rule change allowing the use of decommissioning funds to dispose of large components.  Ex. B at 15 (2008 Reg. St.).

      4.     <u>Macro-Economic Conditions</u> – The Complaint alleges that the Company's disclosures were misleading because the Company failed to disclose that macro-economic conditions in the U.S. and globally could have an adverse effect on the Company's performance. ¶¶121, 126, 185, 191, 196, 199, 205, 208, 210, 221, 223, 225.

Putting aside that no issuer has an obligation under the securities laws to predict the macro-economic future, Energy*Solutions* warned that macro-economic conditions could have a negative impact on the Company's performance:

§   Economic downturns and reductions in government funding could have a negative impact on our businesses.  Ex. A at 19 (IPO Reg. St.); Ex. B at 19 (2008 Reg. St.); Ex. D at 29 (2007 10-K).

<u>Scienter Allegations</u>

The Complaint relies on broad, conclusory allegations that the Energy*Solutions* Defendants, as a group, "knew or had reason to know" of the alleged misstatements or omissions.  *E.g.*, ¶¶229-31.  The only allegations in the entire Complaint that are even remotely related to any Defendant's possible state of mind are that: (1) Creamer allegedly "sanctioned" an Energy*Solutions* employee, and that employee allegedly "manipulated" in some unspecified way the Zion Project cost estimates, ¶179; (2) Creamer was involved in the preparation of the IPO Registration Statement's forecasts, which were allegedly prepared with a "positive spin," ¶233; and (3) Creamer and Strawbridge allegedly took a "hands on" approach to preparing budgets and forecasts, ¶234.  The Complaint also references eight unidentified persons, to whom are attributed little more than vague and conclusory statements such as "economic conditions deteriorated" and "there was a decline in Energy*Solutions*' business."  ¶116.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he touchstone for adequate pleading is plausibility. . . .  Thus, materials properly before the court must provide grounds for more than mere speculation or suspicion that a plaintiff is entitled to the requested relief."  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 259 (S.D.N.Y. 2008); *see Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 667 (S.D.N.Y. 2008).

9

While a court must accept as true well-pleaded allegations, "conclusory statements unsupported by factual allegations or legal conclusions and characterizations presented as fact" are insufficient to state a claim. *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 434 (S.D.N.Y. 2000) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).") (internal quotations omitted). Moreover, it is "improper . . . to assume that the [a plaintiff] can prove facts that it has not alleged." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 165 (S.D.N.Y. 2003) (internal quotation omitted).

## ARGUMENT

## I.    Plaintiffs' Section 10(b) Claim Should Be Dismissed Because The Complaint Fails To Allege A Material Misstatement Or Omission, Scienter, Or Loss Causation

To state a claim under 10(b), a plaintiff must plead with particularity: (1) a material misstatement or omission, (2) made with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, (5) economic loss and (6) loss causation, *i.e.* a causal connection between the misrepresentation and the loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

The PSLRA and Fed. R. Civ. P. 9(b) require Plaintiffs to plead their claims with particularity. *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Under the PSLRA, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Moreover, to plead a securities fraud claim, the PSLRA requires Plaintiffs to "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *see*

*Tellabs*, 551 U.S. at 313 (describing the PSLRA's "[e]xacting pleading requirements" that

"require[] plaintiffs to state with particularity both the facts constituting the alleged violation,

and the facts evidencing scienter.").  Likewise, Rule 9(b)'s heightened pleading requirements

require Plaintiffs to "state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b); *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 168 (2d Cir. 2005).

Here, the Complaint fails to state a claim under Section 10(b) for three independent

reasons: (1) it fails to allege with the required specificity that any Defendant made a material

misstatement or omission; (2) its thin factual allegations do not satisfy the required "strong

inference" of scienter; and (3) it fails to plead loss causation.

## A.      The Complaint Fails To Allege With Particularity Any Material Misstatement Or Omission

Plaintiffs allege that Energy*Solutions*, ENV and the Individual Defendants violated

Section 10(b) by misstating or omitting material facts in the Registration Statements and a

number of other disclosures made throughout the Class Period.  ¶¶118-31, 180-227.  Plaintiffs'

claim fails because: (1) each of the alleged misstatements is a forward-looking statement

protected by the PSLRA safe harbor and the common law "bespeaks caution" doctrine; and (2)

the Complaint fails to allege any material omission.

### 1.      The Alleged Misstatements Are Inactionable Because They Are Forward-Looking Statements Protected By The PSLRA Safe Harbor And The Common Law "Bespeaks Caution" Doctrine

Each of the challenged disclosures is a "forward-looking statement" because it concerns

Energy*Solutions*' future prospects.[5]  Forward-looking statements include management's plans

---

[5]      ¶¶119-20, 122, 125, 127, 129, 184, 190, 192, 194-5, 198, 200-1, 203-4, 206-7, 209, 211, 214, 217, 222, 224, 226.

and objectives for future operations, statements of future economic performance and assumptions underlying both.  15 U.S.C. § 78u-5(i)(1).  Here, the statements all concern Energy*Solutions*' potential opportunities to decommission shut-down nuclear reactors, plans regarding the Zion Project, and efforts to convince the NRC to adopt a rule change.  *E.g.*, "We are *actively marketing* our D&D services for shut-down reactors to nuclear power and utility companies." ¶¶119, 125 (emphasis added); "Based on the *expected* timing of the license transfer of the Zion license stewardship contract. . .the Company *expects* revenues and earnings for 2008 to be weighted towards the second half of the year." ¶184 (emphasis added); "[T]he NRC *is reviewing* a proposal to permit operators of nuclear reactors to access decommissioning funds for disposal of large components that have been retired from use in nuclear reactors." ¶122 (emphasis added).

Such statements are clearly "forward-looking."  *In re Aegon N.V. Sec. Litig.*, No. 03-cv-0603(RNS), 2004 WL 1415973, at *12 (S.D.N.Y. June 23, 2004); *In re Columbia Labs., Inc. Sec. Litig.*, 144 F. Supp. 2d 1362, 1368 (S.D. Fla. 2001) (statements reflecting "optimism and expectations about a future event," plans for a product and projected increased profits are forward-looking); *Fort Worth Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218 (S.D.N.Y. 2009) (statements regarding potential FDA approval are forward-looking).  The PSLRA created a "safe harbor" for forward-looking statements.  15 U.S.C. §78u-5.  Under the safe harbor provision, a forward-looking statement will not give rise to liability under the securities laws if it is either: (1) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or (2) made without knowledge that the statement is false or misleading.  15 U.S.C. §78u-5(c)(1); *see In re Sierra Wireless, Inc. Sec. Litig.,* 482 F. Supp. 2d 365, 380 (S.D.N.Y. 2007).

The common law counterpart to the PSLRA's safe harbor provision is the "bespeaks caution" doctrine. Under the bespeaks caution doctrine, meaningful cautionary language renders omissions or misrepresentations immaterial as a matter of law. *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004); *In re IAC/InterActiveCorp Sec. Litig.,* 478 F. Supp. 2d 574, 586 (S.D.N.Y. 2007).

Each of the challenged statements was identified as a forward-looking statement and accompanied by meaningful cautionary language.[6] Because this contrary language identified the factors that "could cause actual results to differ from those in the forward-looking statement[s]," the challenged statements are protected under the PSLRA's safe harbor and the bespeaks caution doctrine. *Rombach* 355 F.3d at 173-176; *IAC/InterActiveCorp*, 478 F. Supp. 2d at 586; *In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993).[7]

> ## 2.     None Of The Challenged Statements In The Complaint Contains A Material Misstatement Or Omission

Plaintiffs' Complaint juxtaposes a parade of the Company's statements with an assortment of random, disconnected and unsupported conclusory assertions. This form of pleading does not satisfy the PSLRA because it "plac[es] the burden on the court to sort out the

---

[6]     Ex. E at 9, 19 (May 14, 2008 10-Q) ("[R]emarks may contain forward-looking statements… risks and uncertainties are discussed in the [2007 10-K]"); Ex. F at 1 (March 18, 2008 Conf. Call) ("[R]emarks may contain forward-looking statements… risks and uncertainties are discussed in the [IPO Reg. St.]"); Ex. G at 1 (May 13, 2008 Conf. Call) ("[R]emarks may contain forward-looking statements… risks and uncertainties are discussed in the [2007 10-K]"); Ex. H at 1 (August 11, 2008 Conf. Call) (same); Ex. I at 3 (March 17, 2008 Press Release) ("Statements in this news release… constitute forward-looking statements…risks and uncertainties are set forth in [the IPO Reg. St.]"); Ex. J at 2 (May 12, 2008 Press Release) ("[R]emarks may contain forward-looking statements… risks and uncertainties are discussed in the [2007 10-K]"); Ex. K at 2 (August 11, 2008 Press Release) ("Statements in this news release… constitute forward-looking statements…risks and uncertainties are set forth in [2007 10-K]").

[7]     The Complaint also fails to allege that any of these forward-looking statements were made with actual knowledge that they were misleading.

alleged misrepresentations and then match them with the corresponding adverse facts" allegedly showing that they were knowingly false when made. *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005); *see In re NTL Inc. Sec. Litig.*, No. 02-cv-3013(LAK), 2003 WL 21767948, at *1 (S.D.N.Y. July 31, 2003) (granting motion to dismiss complaint because "the court is left to guess whether every statement . . . is said to have been false and misleading and, if so, what supposedly was wrong with each"). The Complaint simply "does not provide any link between an alleged misleading statement and specific factual allegations demonstrating the reasons why the statement was false or misleading, as the PSLRA requires." *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 883 (8th Cir. 2009).

Notwithstanding its length and confusing nature, the Complaint boils down to four categories of alleged misrepresentations: (1) opportunities in the shut-down nuclear reactor market; (2) the Zion Project; (3) the NRC Petition; and (4) U.S. and global macro-economic conditions.

> **a.** **The Complaint Fails To Allege Any Material Misstatement Or Omission Regarding Opportunities In The Shut-Down Reactor Market**

Plaintiffs allege that the Company's disclosures regarding opportunities in the shut-down reactor market were misleading because it failed to disclose that contributions to decommissioning trust funds "experienced significant declines," decommissioning trust funds "decreased," and nuclear reactor owners experienced "shortfalls" or "deficiencies" in their trust funds. ¶¶121, 126, 185, 191, 196, 199, 205, 208, 210, 221, 223, 225.

These non-specific and conclusory allegations lead nowhere. The Complaint does not specify which of the 104 operating reactors and 13 shut-down reactors in the U.S. had trust funds that experienced a decline, or by what amount any specific fund declined. Nor does the Complaint identify which customer experienced an alleged "shortfall," what the value of its

decommissioning trust fund was at the time it allegedly suffered the "shortfall," and on what basis such amount could be characterized as a "shortfall." Further, the Complaint does not allege which of these "facts" were known by Energy*Solutions*. This falls far short of meeting the strict pleading standard. *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 103-106 (2d Cir. 2007) (Rule 9(b) and PSLRA are not satisfied when a complaint "relies, at best, on speculative inferences" and offers "generalized allegations" as to wrongdoing); *City of Sterling Heights Police & Fire Retirement System v. Vodafone Group Public Ltd. Co.*, 655 F. Supp. 2d 262, 269-70 (S.D.N.Y. 2009) (no misstatement where plaintiff "[failed] to allege at what point in time an impairment charge should have been taken and which specific losses known to the company should have triggered an impairment charge"); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 406 (S.D.N.Y. 2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do.") (quoting *Twombly*, 550 U.S. at 554).

The Complaint appears to suggest that the statements of historical fact regarding decommissioning trust fund balances were somehow misleading because the balances declined in value during the economic downturn in 2008 – after the statements were made. ¶¶120, 125. But there is no well-pleaded allegation that the statements were false or misleading when made. Courts consistently hold that accurate statements of historical fact are not actionable and are not misleading simply because less favorable results might occur in the future. *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 387 (S.D.N.Y. 2004) (holding that an "accurate description of historical prices" cannot support a securities fraud claim); *In re Duane Reade Inc. Sec. Litig.*, No. 02-cv-6478 (NRB), 2003 WL 22801416, at *6 (S.D.N.Y. Nov. 25, 2003) (the "disclosure of

accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.").

Plaintiffs allege that the Company's disclosures regarding opportunities in the shut-down reactor market were misleading because the Company failed to disclose that certain shut-down nuclear reactors were "under the control of an owner-operator that would provide decommissioning services instead of Energy*Solutions*." ¶¶121, 126, 185, 191, 196, 199, 205, 208, 210, 221, 223, 225. However, the *only* fact alleged is that the license for the GE VBWR nuclear plant "had already been transferred to [another entity] to handle any decommissioning activities." ¶79. It is a complete mystery as to how this "fact" is material or could render Energy*Solutions*' statements misleading in any way. Energy*Solutions expressly excluded* GE VBWR's trust fund in its disclosures regarding shut-down reactor trust fund balances. ¶¶120, 125; *see Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 668 (2d Cir. 2009) (holding that a misstatement or omission is material only if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.") (internal quotation and citation omitted).

Plaintiffs allege that the Company's disclosures were misleading because the Company failed to disclose that certain shut-down nuclear reactor owners were "numerous years away from likely commencement of any decommissioning activities." ¶¶121, 126, 185, 191, 196, 199, 205, 208, 210, 221, 223, 225. But Plaintiffs cannot point to any statement by the Company to the contrary. The Company specifically informed investors that its plans included long-term as well as short-term prospects. *E.g.*, "Our objective is to be a leading provider of specialized, technology-based nuclear services worldwide by capitalizing on significant *near- and long-term growth opportunities* in the nuclear services industry." Ex. A at 4 (IPO Reg. St.), Ex. B at 4

16

(2008 Reg. St.) (emphasis added).  Moreover, Energy*Solutions* expressly warned investors that "Owners and operators of shut-down nuclear reactors have the option of maintaining their reactors in SAFSTOR or monitored storage indefinitely, *thus allowing their decommissioning trust funds to grow until such time in the future that they decide to pursue a D&D program*."  Ex. A at 80 (IPO Reg. St.); Ex. B at 74 (2008 Reg. St.); Ex. D at 31 (2007 10-K).

> **b.    The Complaint Fails To Allege Any Material Misstatement Or Omission Regarding The Zion Project**

Plaintiffs claim that the Company failed to disclose that the Zion Trust Fund allegedly "declined" during the Class Period and was allegedly "not adequate to fund the cost of decommissioning."  ¶¶128, 186, 191, 193, 196, 199, 205, 208, 210, 218, 221, 223, 225.  The Complaint fails to plead any facts that support these conclusory allegations.  The Complaint fails to explain how the Zion Trust Fund was "less than represented" when the source of this information was Exelon itself – the *owner* of the Zion Trust Fund.  Ex. A at 81 (IPO Reg. St.); Ex. B at 75 (2008 Reg. St.).  Instead, Plaintiffs attempt to rely on Exelon's estimate of the Zion Trust Fund as of November 30, 2008 to discredit the Company's disclosures.  ¶84.  But Exelon's *November* 2008 estimate was made *more than three months* after the last disclosure challenged by Plaintiffs – the *August* 2008 conference call —and over *four months* after the 2008 Offering.  Thus, there is no factual support for Plaintiffs' bald conclusion that *at the time of the challenged statements* the Zion Trust Fund was any lower than represented.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004) (the truth of a statement is evaluated by the facts "as they existed when the registration statement became effective"); *Yu v. State St. Corp.*, 686 F. Supp. 2d 369, 376-7 (S.D.N.Y. 2010).[8]

---

[8]    According to the Complaint, "CW1," a confidential witness, allegedly claims he "knew that the Zion Trust Fund had declined in value by May 2008."  ¶85.  This allegation is wholly conclusory.  Among other things, it does not specify the time period in which the alleged decline

The Complaint also refers misleadingly to an "Exelon presentation" containing a decommissioning cost estimate of "$1.091 billion, $221 million more than the value of the Zion Trust Fund" and stating that "additional time is required for [the Zion Trust] funds to grow before decommissioning can commence."  ¶87.  This presentation was made by Adam H. Levin of Exelon on December 17, 2008 at the Fall 2008 meeting of the Midwestern Radioactive Materials Transportation Committee.  Ex. M.  The "additional time is required" refers to Exelon's internal estimates of what it would cost to carry out the project using traditional decommissioning methods.  Ex. M at slide 6.  The very same report actually indicates that for Energy*Solutions* to carry out the Zion Project using its proprietary methods, the estimate was $978 million.  Ex. M at slide 10.  Contrary to Plaintiffs' mischaracterization of the document, this presentation actually indicates that the "spread between trust fund asset and decommissioning liability is narrow enough *to begin decommissioning today*."  *Id*. (emphasis added).[9]

### c.    The Complaint Fails To Allege Any Material Misstatement Or Omission Regarding The NRC Petition

Plaintiffs allege that Energy*Solutions* failed to disclose that "the business prospects of the Company were heavily dependent upon a favorable ruling from the NRC on the Petition" and that a rejection of the NRC Petition "would eliminate a significant portion of the Company's growth prospects."  ¶¶124, 131, 187, 191, 193, 196, 199, 202, 205, 208, 210, 221, 227.  That is simply wrong.  Energy*Solutions* disclosed precisely these risks:

---

occurred or the amount by which the Zion Trust Fund allegedly declined.  *Vodafone*, 655 F. Supp. 2d at 269-70; *Caiafa*, 525 F. Supp. 2d at 406.

[9]    If allegations in the Complaint are contradicted by documents made part thereof or referred to therein, the documents control.  *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1996); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).

§   [F]ailure of the [NRC] proposal to be adopted could have an adverse impact on the prospects for our Commercial and LP&D segments.  Ex. A at 20 (IPO Reg. St.); Ex. B at 20 (2008 Reg. St.).

§   Our quarterly operating results may fluctuate significantly because of a number of factors, many of which are outside our control, including…the adoption of a proposed NRC rule change allowing the use of decommissioning funds to dispose of large components.  Ex. B at 15 (2008 Reg. St.).

Plaintiffs also allege that the Company failed to disclose the likelihood of a rejection because "the NRC had rejected proposals similar to the Petition on numerous occasions."  ¶¶124, 131, 187, 191, 193, 196, 199, 202, 205, 208, 210, 221, 227.  Plaintiffs are wrong again.  First, as just shown, the fact that the proposal could be rejected was starkly disclosed.  There is no securities law requirement that a company "handicap" the probability of an event occurring.  Nor is there any allegation that the Company stated or implied any likelihood of approval.  Second, Plaintiffs make no allegation that any Defendant had information that the Petition would be denied prior to the NRC's decision in October 2008.  Allegations that a defendant "should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud."  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *see Acito v. IMCERA Group. Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("lack of clairvoyance simply does not constitute securities fraud"); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

Moreover, the entire history of NRC rulings from which Plaintiffs argue that "it was highly probable that the NRC would reject the Petition" (¶¶96-111) is publicly available. Plaintiffs cannot claim that Energy*Solutions* investors were misled because of an omission of publicly available information.  *Higginbotham v. Baxter*, 495 F.3d 753, 759 (7th Cir. 2007) (dismissing claim that relied on allegation that management knew but concealed already public information); *Garber*, 347 F. App'x at 668-9; *In re Merrill Lynch & Co., Inc. Sec. Litig.*, 272 F. Supp. 2d 243, 249-50 (S.D.N.Y 2003); *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358,

377-378 (E.D.N.Y. 2003); *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 515 (7th Cir.

1989); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1142 (9th Cir. 1996).

> d.    The Complaint Fails To Allege Any Material Misstatement Or
>       Omission Regarding Macro-Economic Conditions

Plaintiffs allege that the Company failed to disclose that macro-economic conditions in

the U.S. and globally could adversely affect Energy*Solutions*' performance.  ¶¶116-117, 121,

126, 185, 191, 196, 199, 205, 208, 210, 221, 223, 225.  Again, Energy*Solutions* disclosed

precisely this information, warning investors that "Economic downturns and reductions in

government funding could have a negative impact on our businesses.  Demand for our services

has been, and we expect that demand will continue to be, subject to significant fluctuations due

to a variety of factors beyond our control, including economic conditions."  Ex. A at 19 (IPO

Reg. St.); Ex. B at 7 (2008 Reg. St.); Ex. D at 29 (2007 10-K).

In any event, issuers have no duty to disclose general macro-economic factors.  "The

omission of generally known macro-economic conditions is not material because such matters

are already part of the 'total mix' of information available to investors."  *Landmen Partners Inc.*

*v. Blackstone*, 659 F. Supp. 2d 532, 545 (S.D.N.Y. 2009); *In re Donald Trump* , 7 F.3d at 377.

> B.    The Complaint's Conclusory Allegations Do Not Give Rise To A Strong
>       Inference Of Scienter

To plead a securities fraud claim under Section 10(b), Plaintiffs must also allege with

particularity "facts giving rise to a *strong* inference that the defendant acted with the required

state of mind," namely, an intent to deceive, manipulate or defraud.  *ECA*, *Local 134 IBEW Joint*

*Pension Trust of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting

15 U.S.C. § 78u-4(b)(2)) (emphasis added).  In the Second Circuit, a plaintiff may establish a

"strong inference" of scienter through allegations that show either "(1) that defendants had the

motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious

misbehavior or recklessness." *ECA*, 553 F.3d at 198.  Courts consider "*all* of the facts alleged, taken collectively," and must also "take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 322-23 (emphasis in original).  On balance, the inference of scienter must be "at least as compelling as any opposing inference of nonfraudulent intent." *ECA*, 553 F.3d at 198 (citation omitted).  Furthermore, a "complaint must allege facts supporting a strong inference of scienter for each defendant with respect to each violation." *Mizzaro* v. *Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (internal quotations omitted).

The Complaint here does not establish the required "strong inference" of scienter because it: (1) improperly relies on group pleading; (2) does not allege motive and opportunity; (3) does not allege conscious misbehavior or recklessness; and (4) improperly relies on confidential witness statements.

### 1.    The Complaint's Improper Reliance On Group Pleading Fails To Satisfy The Rigorous Pleading Standard For Scienter

The scarcity of references to Individual Defendants in the Complaint and the failure to differentiate among actions attributed to Energy*Solutions*, ENV, and the Individual Defendants underscores the Complaint's failure to plead scienter.  "Group pleading," or referring to all defendants under a common label, cannot satisfy the rigorous scienter pleading standard because it does not allege particularized facts regarding each specific individual.  "[T]o establish scienter in misrepresentation cases, facts must be alleged which particularize how and why *each* defendant actually knew, or was reckless in not knowing, that the statements were false at the time made." *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009) (emphasis added) (internal quotation marks and citation omitted); *see Stair v. Calhoun*, No. 07-cv-03906 (JFB)(ETB), 2009 WL 792189, at *12 (E.D.N.Y. Mar. 23, 2009); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 219 (S.D.N.Y. 2004); *In re Citigroup,*

*Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004). This Court has repeatedly held that scienter cannot be alleged through group pleading. *E.g.*, *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 449-450 (S.D.N.Y. 2005); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005).

Plaintiffs attempt to rely on the very sort of broad-brush conclusory allegations concerning all of the Energy*Solutions* Defendants that have been held inadequate as a matter of law. *E.g.*, ¶230 ("Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. . ."); ¶231 ("[E]ach of the Defendants were aware of the negative impact that the slowing economy was having on Energy*Solutions*' business and potential projects. . ."). Indeed, the Complaint does not make any attempt to allege that any single Defendant had knowledge that the alleged statements were false when made. These undifferentiated references to "Defendants" cannot satisfy Plaintiffs' burden to allege a "cogent and compelling" inference of scienter.

This deficiency is even more apparent when placed in the context of the Complaint as a whole, which, despite being 267 paragraphs and almost 100 pages long, contains only three allegations that are even remotely related to the alleged state of mind any Individual Defendant:

§   Creamer allegedly "sanctioned" Energy*Solutions* employee Al Rafati, and Rafati allegedly "manipulated cost estimates for the Zion Project." ¶179.

§   Senior management, including Creamer, was involved in the preparation of the IPO Registration Statement's forecasts, and these forecasts allegedly contained a "positive spin." ¶233.

§   Senior management, including Creamer and Strawbridge, allegedly took a "hands on" approach to preparing budgets and forecasts. ¶234.

For the reasons discussed below, none of these allegations supports a compelling inference of scienter.[10]

### 2. The Complaint's Conclusory Allegations Fail To Allege Motive And Opportunity

In order to properly plead motive to commit fraud, a plaintiff is required to, among other things, demonstrate "concrete benefits that could be realized by one or more of the false statements and wrongful non-disclosures alleged, as well as the means and likely prospect of achieving those concrete benefits." *In re Veeco Instruments Sec. Litig.*, 235 F.R.D. 220, 230 (S.D.N.Y. 2006) (internal citations omitted). "General allegations that defendants acted in their economic self-interest are not enough." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000). The benefit must be personal and specific. A "generalized motive, one which could be computed to any publicly owned, for profit endeavor" is insufficient. *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 468 (S.D.N.Y. 2008) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996)).

As an initial matter, the Complaint fails to allege any motive whatsoever for Defendants Energy*Solutions*, McBride, Winder or De Planque. The Complaint simply contains no factual

---

[10]     The core operations doctrine cited by Plaintiff (¶237) does not eliminate the obligation to allege "how and why each defendant actually knew, or was reckless in not knowing" about the alleged misstatements. *PXRE Group*, 600 F. Supp. 2d at 536 (internal quotations and citations omitted). Moreover, courts in this District have expressed skepticism as to whether the doctrine has survived the passage of the PSLRA. *In re NovaGold Resources Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 304 (S.D.N.Y. 2009); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 294 n.209 (S.D.N.Y. 2006). Plaintiff cannot use the doctrine to exhume the pre-PSLRA concept of status-based liability without regard to an individual defendant's scienter. *Cf. Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, No. 08-cv-8143(WHP), 2010 WL 961596, at *10 (S.D.N.Y. Mar. 17, 2010). *See In Teamsters Allied Benefit Funds v. McGraw*, No. 09-cv-140(PGG), 2010 WL 882883, at *10 (S.D.N.Y. Mar. 11, 2010); *Kinsey v. Cendant Corp.*, No. 04-cv-0582(RWS), 2005 WL 1907678, at *5 (S.D.N.Y. Aug. 10, 2005); *Glickman v. Alexander & Alexander Servs., Inc.*, No. 93-cv-7594, 1996 WL 88570, at *14 (S.D.N.Y. Feb. 29, 1996).

allegation that these Defendants benefitted in any "concrete and personal way from the purported fraud." *Novak*, 216 F.3d at 307-08.

Similarly, the Complaint does not allege motive with respect to the Underwriter Defendants. A desire for a successful underwriting is not sufficient to show an improper motive. *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 438 (S.D.N.Y. 2006) (citing *Fisher v. Offerman & Co., Inc.*, No. 95-cv-2566(JGK), 1996 WL 563141, at *7 (S.D.N.Y. Oct. 2, 1996); *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1190 (S.D.N.Y. 1996).

Regarding the remaining Energy*Solutions* Defendants, the Complaint conclusorily alleges that they were motivated to engage in fraud so they could profit through their interests in ENV.[11] ¶240-43. If that were all it took to plead motive, then – by definition – every successful initial public offering would be inherently tainted. *See In re Prestige Brands Holding, Inc.*, No. 05-cv-06924(CLB), 2006 WL 2147719, at *7 (S.D.N.Y. July 10, 2006) ("Early Investors and Promoters routinely sell stock in IPOs, and such sales raise no inference of fraud"). Plainly, this is insufficient to allege that any Defendant "benefitted in some concrete and *personal* way." *Novak*, 216 F.3d at 307 (emphasis added). The Complaint fails to specify specifically *how* and *by how much* each Individual Defendant would benefit from the alleged scheme. The Complaint's unsupported allegation that certain unspecified "cash distributions" were made to ENV's members does not suffice. ¶241; *see In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 (S.D.N.Y. 2009) (failing to find motive where, *inter alia*, complaint failed to allege facts relating to the amount of profit each individual Defendant garnered from his sales); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) ("To support a claim of motive based on the benefit a defendant derives from an increase in the value of his holdings, a plaintiff

---

[11]    These Defendants are Creamer, Strawbridge, Everest, Goldberg, Clements, Hirt, Lindsay, Roriston and Weinberg.

must demonstrate some sale of 'personally-held stock' or 'insider trading' by the defendant.") (internal citations omitted).

Regarding ENV, Plaintiffs have not adequately alleged, as they must, that the IPO and 2008 Offering involved "unusual" or "suspicious" stock sales. *Acito v. IMCERA Group. Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97-cv-1865 (HB) 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998) ("Unusual insider trading activity during the class period may permit an inference of scienter; however, plaintiffs bear the burden of showing that any such sales are in fact unusual."). Regardless of the amount of stock ENV sold during the Class Period, the timing of these sales was entirely ordinary. It is not uncommon or suspicious to sell stock in association with a public offering; indeed, the sale of stock is the very purpose of the offering. *In re AFC Enterprises, Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1373 (N.D. Ga. 2004).

Plaintiffs' additional allegation that Energy*Solutions* used IPO proceeds to pay Energy*Solutions* management pursuant to their employment contracts similarly fails. ¶244. Payment pursuant to a valid employment contract is insufficient to establish a motive to commit securities fraud. *Abbad v. Amman*, 112 F. App'x 97, 99 (2d Cir. 2004).

### 3.    The Complaint's Conclusory Allegations Fail To Raise An Inference Of Conscious Misbehavior Or Recklessness

Where a plaintiff has not successfully pleaded motive or "[w]here motive is not apparent … the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (internal quotations omitted). Conscious misbehavior or recklessness is "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *AstraZeneca*, 559 F.

Supp. 2d at 469 (quoting *In re Carter-Wallace Sec. Litig.,* 220 F.3d 36, 39 (2d Cir. 2000)).

Plaintiffs must "specifically allege[] defendants' knowledge of facts or access to information

contradicting their public statements [or that] . . . defendants … should have known that they

were misrepresenting material facts related to the corporation." *Kalnit,* 264 F.3d at 142 (quoting

*Novak,* 216 F.3d at 308).  In order to allege a "strong inference of scienter," the allegations "must

be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *ECA,*

553 F.3d at 198 (internal quotations omitted).

Moreover, when attempting to raise "strong inferences of scienter" with respect to

forward-looking statements, a plaintiff must allege facts demonstrating that the defendant made

such statements with *actual knowledge* of their falsity.  *Slayton v. Am. Express*, 604 F.3d 758,

774 (2d Cir. 2010); *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510(CPS), 2005 WL

2277476, at *15-16 (E.D.N.Y. Sept. 19, 2005).

> **a.    The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding Opportunities In The Shut-Down Nuclear Reactor Market**

Plaintiffs fail to allege conscious misbehavior or recklessness in connection with any

alleged misstatements or omissions regarding opportunities in the shut-down nuclear reactor

market.  The Complaint relies on impermissibly broad, conclusory allegations that the

Energy*Solutions* Defendants "knew or had reason to know" of the alleged misstatements or

omissions.  *E.g.*, ¶¶229-31.  Such allegations are generic, bald conclusions, not specific factual

allegations that would permit this Court to draw the required strong inference of scienter.

Plaintiffs' attempt to meet the high pleading standard through confidential witnesses fails

miserably.  CW2 and CW5 express nothing more than conclusory opinions to the effect that

"economic conditions deteriorated" and "there was a decline in Energy*Solutions*' business."

¶116.  Not only are these statements exceedingly vague, they suggest nothing about any

26

Energy*Solutions* Defendant's actual state of mind, or actual knowledge.  *Konkol v. Diebold, Inc.*, 590 F.3d 390, 400-01 (6th Cir. 2009) (conclusory statements from confidential witnesses are insufficient to establish scienter).

Equally meaningless is CW8's editorial view that "Energy*Solutions* put its positive 'spin' on the numbers in the IPO Prospectus when discussing the outlook of the Company."  ¶233. Companies and their officers cannot be held liable for securities fraud because they "operate[d] with a hopeful outlook."  *Rombach*, 355 F.3d at 174; *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994) ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage.").

The opposing nonfraudulent inference – that the Energy*Solutions* Defendants subjectively believed their statements regarding opportunities in the shut-down nuclear reactor market – is far more compelling.  *Slayton*, 604 F.3d at 775-6 ("The opposing nonfraudulent inference is that while the defendants knew that their high-yield portfolio was likely deteriorating, and that they did not know the extent of the deterioration, they subjectively believed that the extent of the deterioration would lead to losses that would be substantially less than $182 million.").

### b.    The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding The Zion Project

Plaintiffs' scienter allegation relating to the Zion Project consists of conclusory statements attributed to two unnamed former Energy*Solutions* executives, CW6 and CW7. According to CW6, Al Rafati, an Energy*Solutions* employee who was "in a position to exercise discretion in cost estimates for Zion," was allegedly "[s]anctioned by Company Senior

27

Executives, including Defendant Creamer" and "manipulated cost estimates for the Zion Project." ¶179.  According to CW7, Rafati was "dishonest," "unethical," and allegedly "manipulated" his estimates "to make them in line with trust fund asset values." *Id*.  As Energy*Solutions* did not make any public disclosure of the allegedly manipulated Zion Project cost estimates and the Complaint does not allege that these cost estimates were subsequently corrected, this anonymous gossip is without legal consequence.  Further, the Complaint does not plead any facts that raise any question about the truthfulness of the Company's statement in the October 14, 2008 press release that a decline in market value of the Zion Trust Fund was the reason for the postponement of the Zion Project.

In addition, the allegations regarding Rafati fail to allege conscious misbehavior or recklessness on the part of any Energy*Solutions* Defendant.  *Konkol*, 590 F.3d at 400-01 (confidential witness statements such as "the false invoicing scheme was perpetrated at a high level within the Company," "[i]t was very obvious what they were doing," and "the false invoicing practice was openly known within the Company" are insufficient to allege scienter).  A careful reading of the statements attributed to CW6 makes plain that there is no allegation of fact that Rafati's alleged "manipulation" of cost estimates was related to his alleged "sanctioning" by Creamer.[12]

The failure of these allegations to plead scienter is particularly clear when they are weighed against the competing inference of nonfraudulent intent.  Here, the inference that the Energy*Solutions* Defendants were operating within their discretion in estimating project costs is

---

[12]    Plaintiffs also attempt to support their scienter allegations by pointing to declining cost estimates in several "Decommissioning Fund Reports" submitted to the NRC.  ¶177-78. However, these reports were prepared and submitted by Exelon.  Exs. O-Q.  Contrary to Plaintiffs' claim that "Defendants provided [these] cost estimates," the reports contain no indication that any Energy*Solutions* Defendant had any involvement in their preparation.  *Id*.

far more compelling.  Indeed, such an inference is supported by the fact that the NRC

*independently* reviewed Energy*Solutions*' estimates and concluded that Energy*Solutions* was

"financially qualified to hold the licenses" for the Zion Project.  Ex. N at 5.

> **c.    The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding The NRC Petition**

The Complaint's vague and conclusory allegations are insufficient to allege conscious

misbehavior or recklessness in connection with any alleged misstatements or omissions

regarding the NRC Petition.  ¶¶229-31.  The Complaint contains no allegation that any

Energy*Solutions* Defendant *actually knew* that the NRC would reject the petition, or that any

Energy*Solutions* Defendant had access to non-public information indicating that the Petition

would be rejected.  Plaintiffs' unsupported conclusion that the Energy*Solutions* Defendants

*should have known* that the Petition would be rejected based on publicly available historical

information cannot support any inference of scienter, let alone the strong inference required.

¶¶94, 124, 131, 231; *see Slayton*, 604 F.3d at 775-6.

It is insufficient to allege that because the NRC Petition was ultimately rejected, the

Energy*Solutions* Defendants must have known it was going to happen.  This is tantamount to

"fraud by hindsight" and is impermissible.  *Shields,* 25 F.3d at 1129 ("[M]isguided optimism is

not a cause of action, and does not support an inference of fraud."); *Kowal v. MCI Commc'ns

Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (holding that a deviation between results achieved

and results predicted *do not* support that there was a lack of reasonable basis for the predictions

when made).

The opposing nonfraudulent inference – that the Energy*Solutions* Defendants

subjectively believed that the outcome of the Petition could not be predicted – is far more

compelling.  *Slayton*, 604 F.3d 775-6.  Such an inference is supported by the fact that no

negative comments were filed in connection with the NRC Petition.  ¶194.  To the contrary, several nuclear facilities owners (Duke Energy, FirstEnergy Nuclear Operating Company, Exelon), the industry trade association (Nuclear Energy Institute) and the Texas state regulator filed supportive comments with the NRC.  Exs. S-W.  Indeed, the positive comments filed by the Texas regulator are particularly significant because decommissioning funds are also subject to ratemaking approvals by state regulators.

> ### d.      The Complaint Fails To Allege Conscious Misbehavior Or Recklessness Regarding Macro-Economic Conditions

The Complaint's conclusory allegation that "each of the Defendants were aware of the negative impact that the slowing economy was having on Energy*Solutions*' business and potential projects" should be afforded no weight.  ¶231.  Neither should the statements by two anonymous persons who describe nothing more than general "declining economic conditions." ¶116-17.  As discussed above, such vague and unsupported statements do not meet the pleading standard.

> ### 4.      The Complaint's Reliance On Vague Statements From Unnamed Sources Not Shown To Have First-Hand Knowledge Of The Relevant Facts Further Undermines An Inference Of Scienter

The Complaint relies heavily on the purported statements of unnamed sources alleged to be former Energy*Solutions* employees.  Some courts have held post-*Tellabs* that "allegations from 'confidential witnesses' must be discounted" because it is "hard to see how information from anonymous sources could be deemed compelling or how we could take account of plausible opposing inferences.  Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist."  *Higginbotham v. Baxter*, 495 F.3d 753, 757 (7th Cir. 2007).  In any event, "confidential sources must be 'described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the

information alleged.'" *In re Am. Express Co. Sec. Litig.*, No. 02-cv-5533(WHD), 2008 WL

4501928, at *7 (S.D.N.Y. Sept. 26, 2008) (internal citation omitted).

 Plaintiffs, however, often provide only brief descriptions of these phantom witnesses that

"fail to allege any facts showing that the confidential sources . . . had any contact with the

Individual Defendants or would have knowledge of what they knew or should have known

during the Class Period." ¶11-19; *see Am. Express*, 2008 WL 4501928, at *8. None of these

witnesses can provide any information as to the Energy*Solutions* Defendants' knowledge or

intent during the Class Period. *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220 (S.D.N.Y.

2008) (allegations based on confidential sources were insufficient to establish scienter where

there were no facts to establish that the confidential sources would have known what information

was communicated to senior executives).

 At the very least, the allegations based on statements from so-called confidential

witnesses must be heavily discounted. *Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 522-23

(S.D.N.Y. 2005) (rejecting under Rule 9(b) assertions by confidential witnesses that lacked

"evidence of what information was actually passed" to defendants), *aff'd,* 157 F. App'x 398 (2d

Cir. 2005); *Konkol*, 590 F.3d at 401 (general statements from confidential witnesses are

insufficient to allege scienter); *Ley v. Visteon Corp.,* 543 F.3d 801, 817 (6th Cir. 2008)

(anonymous statement that auditor "signed off" on improper accounting practices failed where

the complaint did not "allege particularized facts about the who, what, where, when and how of

what [the auditor] knew or disregarded about Visteon's accounting practices"); *New Jersey

Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.,* 537 F.3d 35, 53 (1st Cir. 2008)

(rejecting confidential witness statements that "say nothing about the nature" of information

allegedly inconsistent with certain drug safety representations); *Indiana Elec. Workers' Pension*

31

*Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) ("[C]ourts must

discount allegations from confidential sources," because under *Tellabs* such "sources afford no

basis for drawing the plausible competing inferences.").

> ### C. The Complaint Does Not Adequately Plead Loss Causation Because Plaintiffs' Alleged Loss Coincides With Other Occurrences

To plead a claim under Section 10(b), a complaint must allege a direct causal connection

between a defendant's allegedly actionable statements and a plaintiff's alleged damages. *Dura*,

544 U.S. at 346-47. Because a decline in stock price can reflect a number of factors other than

an alleged prior misrepresentation, a plaintiff must plead loss causation "with sufficient

specificity to enable the court to evaluate whether the necessary causal link exists." *Teachers'*

*Ret. Sys. of L.A. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007).

Plaintiffs identify the Company's October 14, 2008 press release that preceded a drop in

stock price. ¶¶144-147. But Plaintiffs fail to demonstrate that any statements therein corrected

any prior misstatements. The October 14 press release disclosed (1) that the economic crisis had

forced a delay of the Zion Project and (2) the NRC had rejected the Petition. These were

disclosures of intervening events, not corrections of prior disclosures. "[W]hen the plaintiff's

loss coincides with a market wide phenomenon causing comparable losses to other investors, the

prospect that the plaintiffs loss was caused by the fraud decreases," and a plaintiff's claim fails

when "it has not adequately pled facts which, if proven, would show that its loss was caused by

the alleged misstatements as opposed to intervening events." *Lentell v. Merrill Lynch & Co.*

*Inc.*, 396 F.3d 161, 174 (2d Cir. 2005) (quoting *First Nationwide Bank*, 27 F.3d 763, 772 (2d Cir.

1994)) (affirming dismissal of a claim brought in the wake of a real estate market downturn);

*Fort Worth Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 228-229 (S.D.N.Y. 2009) (loss

causation was absent because share price decline was due to FDA's rejection of company's application, not the company's announcement of such rejection).

## II.    Plaintiffs' Section 20(a) Claim Fails Because It Depends On The Faulty Section 10(b) Claim

Plaintiffs also allege that the Individual Defendants and ENV violated Section 20(a) of the Exchange Act.  ¶¶ 264-67.  Plaintiffs, however, have not alleged a primary violation of Section 10(b) and therefore have failed to allege control person liability.  *Rombach*, 355 F.3d at 177-78.

## III.    Plaintiffs' Securities Act Claims Fail

Plaintiffs allege that Defendants are liable under Section 11 and 12(a)(2) of the Securities Act.  Section 11 liability, by its terms, is limited strictly to statements within the four corners of a registration statement or prospectus.  15 U.S.C. §77k(a).  To state a claim under Section 11, Plaintiffs therefore must identify an allegedly "untrue statement of a material fact" or an omission of "a material fact" in one of the two Registration Statements at issue in this case. *Rombach,* 355 F.3d at 168 n.2 (2d Cir. 2004) (internal quotation marks omitted).  Accordingly, no claim is asserted under the Securities Act for statements outside the Registration Statements. "To state a claim under Section 12(a)(2), [plaintiffs] must satisfy the same requirements as under Section 11." *Backhaus v. Streammedia Commc'ns, Inc.*, No. 01-cv-4889(LMM/THK), 2002 WL 1870272 at *5 (S.D.N.Y. Aug. 14, 2002).

As demonstrated in Point I.A.2, addressing Plaintiffs' Section 10(b) claim based on the two Registration Statements, the Complaint fails to identify any misstatement or material omission in these documents.  Those arguments apply with equal force to Plaintiffs' claims under the Securities Act and compel dismissal of the claims.  In addition, Point I.A.1 explains in detail how the Registration Statements specifically disclosed the very risks Plaintiffs allege came

to pass. "The Second Circuit has consistently upheld Rule 12(b)(6) dismissals of securities

claims where the risks that [the plaintiff] claim[ed] went unaddressed were mentioned explicitly

in the prospectus." *Miller v. Lazard, Ltd.*, 473 F. Supp. 571, 579 (S.D.N.Y. 2007) (citing cases

and dismissing Section 11 and 12 claims where prospectus warned of matters allegedly

misrepresented); *see Lowinger v. Pzena Investment Mgmt.*, 341 F. App'x 717, 718-20 (2d Cir.

2009) (complaint dismissed because allegedly concealed risk was disclosed); *In re AIG Advisor

Group Secs. Litig.*, 309 F. App'x 495, 498 (2d Cir. 2009) (affirming dismissal of complaint

where allegedly concealed "conflict of interest" at heart of plaintiffs' claim was disclosed). This,

too, requires dismissal of the Securities Act claims in their entirety.

 Point I.A.1 further explains why all of the alleged misrepresentations identified in the

Complaint were forward-looking statements. These statements all fall within the safe harbor

protections applicable to claims under the Securities Act for two separate and independent

reasons. First, the alleged misrepresentations fall within the safe harbor provision because, as

discussed on pages 11 to 13 *supra*, they were accompanied by meaningful cautionary language.

15 U.S.C. §77z-2(c)(1)(A) (defendant cannot be held liable for forward-looking statements

accompanied by cautionary language). Second, the supposed misrepresentations fall within the

safe harbor because Plaintiffs fail to raise plausible allegations that any of the Defendants had

"actual knowledge…that the statement[s] [were] false or misleading." *Id.* §77z-2(c)(1)(B)

(defendant cannot be held liable for forward-looking statement unless the statements were made

with actual knowledge of falsity). Further, the Complaint does not make any attempt – plausibly

or otherwise – to allege that the Underwriter Defendants had any knowledge that the alleged

statements were false when made. The common law bespeaks caution doctrine bars Plaintiffs'

Securities Act claims for the same reasons. *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2,

5 (2d Cir. 1996) (dismissing Securities Act claims based on forward-looking statements because prospectus bespoke caution).

**A.    Plaintiffs' Section 11 And 12(a)(2) Claims Fail Because The Complaint Fails To Identify Any Actionable Misstatement Or Omission**

Although labeled and packaged as non-fraud claims, Rule 9(b) still applies to Plaintiffs' Securities Act claims because they self-evidently are based on the same alleged "facts" and the same factual allegations as Plaintiffs' securities fraud claims. *Compare* ¶¶119-131, 180-228, 231. Indeed, Plaintiffs "do not allege that the Registration Statement or Prospectus contains any additional 'untrue statement [or omission] of a material fact' independent of [the fraud] allegations." *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006) (applying Rule 9(b)). It makes no difference that Plaintiffs split the Complaint into two parts. Rule 9(b) still applies. *In re J.P. Morgan Chase*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (plaintiff "cannot evade Rule 9(b)'s strictures" by splitting complaint in two). This is particularly true because Plaintiffs make "no effort . . . to show any other basis for the claims levied at the" Registration Statements other than fraud. *Rombach*, 355 F.3d at 172.

Plaintiffs' Securities Act claims fail under Rule 9(b). For the reasons discussed above, the Complaint fails to plead any material misstatement or omission with particularity. Thus, like Plaintiffs' 10(b) claim, the Section 11 and 12(a)(2) claims should be dismissed for failing to plead any actionable misstatement or omission.

Plaintiffs' Securities Act claims also fail because, where, as here, Rule 9(b) applies, the "scienter requirements of Rule 9(b)" apply as well. *In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*, No. 03-cv-8208, 2006 U.S. Dist. LEXIS 20758, at *27 n.12 (S.D.N.Y. Apr. 14, 2006) (citing *Rombach*, 355 F.3d at 171). Although allegations of intent may be averred "generally," Fed. R. Civ. P. 9(b), *Twombly* requires Plaintiffs to raise well-pleaded, non-

conclusory factual allegations that can be reviewed based on the court's "judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1951. "Well-pleaded facts [that] do not permit the court to infer more than the mere possibility of misconduct" are insufficient to allege a required state of mind. *Id.* This has always been the rule in the Second Circuit. *E.g.*, *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (Rule 9(b) requires pleaded facts to give rise to "strong inference that the defendant had an intent to defraud, knowledge of falsity, or a reckless disregard for the truth."). For all the reasons discussed in Point I.B, Plaintiffs fail to plead scienter against any Defendant. Further, Plaintiffs do not even attempt to demonstrate scienter with respect to the Underwriter Defendants, much less raise factual allegations that would permit the Court to infer more than the mere possibility that the Underwriter Defendants acted with scienter.

### B.    The Registration Statements Contained All The Required Disclosure And Thus Did Not Violate Items 303, 503 Or 103

Plaintiffs claim that the Registration Statements violated Section 11 and 12(a)(2) by failing to make disclosures supposedly required under Items 303, 503 and 103 of Regulation S-K. These allegations fail to state a claim under the Securities Act.

### 1.    The Registration Statements Satisfy The Requirements Of Items 303 And 503 Because They Disclose All Known Trends, Events, Uncertainties, And Significant Risks

To state a claim based on an alleged failure to comply with the requirements of Item 303, a plaintiff must allege that a registrant failed to disclose known trends, events or uncertainties that are reasonably likely to cause the registrant's financial information not to be indicative of future operating results. Plaintiffs allege that "[t]he problems with the License Stewardship Program, the Zion Project and the probability that the NRC would reject the Petition were known uncertainties" that should have been disclosed pursuant to Item 303. ¶133.

36

To state a claim based on an alleged failure to comply with the requirements of Item 503, a plaintiff must allege that a registrant failed to disclose "*the most significant factors* that make the offering speculative or risky." 17 C.F.R. § 229.503(c) (emphasis added). With respect to Item 503, Plaintiffs allege the same supposed violation of Item 303, and add that the Registration Statements "failed to disclose the negative impact that the slowing economy was having on Energy*Solutions*' business and prospects going forward." ¶¶137-38.

The Complaint fails to plead a plausible failure to comply with either one of these regulatory requirements because, as discussed above in Point I.A, the Registration Statements extensively disclosed risk factors regarding the License Stewardship Program, the Zion Project, the NRC Petition, and macro-economic conditions. Ex. A at 15-20, 80 (IPO Reg. St.); Ex. B at 8, 15-20, 74-75 (2008 Reg. St.).

>    **2.    The Registration Statements Satisfy The Requirements Of Item 103 Because They Adequately Disclosed The Information Concerning The NRC Petition That Would Be Material To A Reasonable Investor**

Plaintiffs allege that the Registration Statements violated Item 103 (requiring disclosure of material legal proceedings) because they failed to adequately describe the Petition as a "material legal proceeding." ¶143. Item 103 does not require disclosure of the NRC Petition because it was not a "material legal proceeding." The NRC's granting of the Petition was not necessary for Energy*Solutions* to conduct its business. Rather, the Petition was a proposal to permit the expansion of the Company's business operations. The Complaint does not plead otherwise.

In any event, Item 103 requires that a description of a material proceeding "must contain the name of the court in which the proceeding is pending, the principal parties, a description of the factual basis alleged to underlie the suit and the relief sought." *Freer v. Mayer*, 796 F. Supp. 89, 92 n.6 (S.D.N.Y. 1992). In determining whether the requirements of Item 103 are met, the

Court must use a "reasonable investor" standard. *Id.* (holding that the omission of the name of the court in which the proceeding is pending does not violate Item 103 because such an omission is immaterial to a reasonable investor.); *see Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 517-18 (7th Cir. 1989) ("Item 103 does not call on registrants to describe the internal organization of courts or administrative bodies or even to state the status of the pending case," there is no need to disclose "the status of the litigation within the tribunal, or how the tribunal is organized, or the probability that the tribunal will deliver a particular decision," and "it is enough to report[] that [a company] needed licenses from the NRC. . ."); *In re SeaChange Intern., Inc.*, No. 02-cv-12116(DPW), 2004 WL 240317, at *10 n. 15 (D. Mass. Feb. 6, 2004) (holding that Item 103 does not require an issuer to disclose the likelihood of success in the litigation).

The Registration Statements satisfied Item 103 because they adequately disclosed the facts about the NRC Petition that would be material to a reasonable investor, including the "name of the court," the principal parties, the factual basis underlying the Petition, and the relief sought.  Ex. A at 17, 20 (IPO Reg. St.); Ex. B at 5, 15, 20, 81, 86 (2008 Reg. St.).

### C.    Plaintiffs' Securities Act Claims Fail To Allege Loss Causation

Section 11 and 12(a)(2) claims must be dismissed when a plaintiff's allegations make it clear that the losses are not due to the revelation of alleged misstatements, but are instead due to other factors.  *In re Security Capital Assur. Ltd. Sec. Litig.*, No. 07-cv-11086(DAB), 2010 WL 1372688, at *32 (S.D.N.Y. March 31, 2010); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 589 (S.D.N.Y. 2006).  As discussed above in Point I.C., the Complaint fails to allege that Plaintiffs' losses were caused by any revelations of material misstatements by Energy*Solutions*.

**IV.    The Section 15 Claim Fails Because It Depends On The Faulty Securities Act Claims**

To plead a prima facie case of control person liability under Section 15, a plaintiff must allege: (1) an underlying primary violation of the securities laws; (2) control over the controlled person; and (3) particularized facts as to the controlling person's culpable participation in the violation of the controlled person.  *Demaria v. Anderson*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001).  Plaintiffs' Section 15 claim fails because no underlying Section 11 or Section 12(a)(2) claim has been established for the reasons discussed above.  *In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171,197 (S.D.N.Y. 2003) ("Liability under Section 15 requires an underlying violation of Section 11 or Section 12(a)(2).").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the claims against them with prejudice.


Dated: New York, New York
        June 18, 2010

                            SIMPSON THACHER & BARTLETT LLP

                            By  /s/ Bruce D. Angiolillo
                            Bruce D. Angiolillo
                            bangiolillo@stblaw.com
                            Jonathan K. Youngwood
                            jyoungwood@stblaw.com
                            Paul J. Sirkis
                            psirkis@stblaw.com
                            425 Lexington Avenue
                            New York, New York 10017-3954
                            Telephone: (212) 455-2000
                            Facsimile: (212) 455-2502

PARR BROWN GEE & LOVELESS

By   /s/ Robert S. Clark                          
Robert S. Clark (*Pro Hac Vice*)
rclark@parrbrown.com
185 South State Street, Suite 800
Salt Lake City, Utah  84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for EnergySolutions, ENV, and Individual Defendants*

SHEARMAN & STERLING LLP

By   /s/ Adam S. Hakki                          
Adam S. Hakki
ahakki@shearman.com
Daniel Lewis
daniel.lewis@shearman.com
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-8691
 Facsimile: (646) 848-8691

*Attorneys for Underwriter Defendants*