D3EPENEC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   CITY OF ROSEVILLE EMPLOYEES RETIREMENT SYSTEM, et al.,
3
                Plaintiffs,
4           v.                          09 CV 8633 (JGK)
   ENERGY SOLUTIONS, INC., et
5  al.,
6                Defendants.
   ------------------------------x
7  BUILDING TRADES UNITED PENSION TRUST FUND, et al.,
8
                Plaintiffs,
9           v.                          09 CV 8648 (JGK)
   ENERGY SOLUTIONS, INC., et
10 al.,
11               Defendants.
   ------------------------------x
12
13                                  New York, N.Y.
                                    March 14, 2013
14                                  11:20 a.m.
   Before:
15
                      HON. JOHN G. KOELTL,
16                                      District Judge
17                      APPEARANCES
18 ROBBINS, GELLER, RUDMAN & DOWD
        Attorneys for Lead Plaintiffs
19 BY:  EVAN J. KAUFMAN
        SAMUEL H. RUDMAN
20      CODY R. LE JEUNE
21 SIMPSON, THACHER & BARTLETT
        Attorneys for all Defendants except Underwriters
22 BY:  BRUCE D. ANGIOLILLO
        EVAN I. COHEN
23
   SHEARMAN & STERLING, LLP
24      Attorney for Defendant Underwriters
   BY:  DANIEL C. LEWIS
25

D3EPENEC

1          (In open court)

2          (Case called)

3          MR. KAUFMAN:  Good morning, your Honor.  Evan Kaufman

4     with Robbins, Geller, Rudman and Dowd for the lead plaintiffs.

5          MR. RUDMAN:  Good morning, your Honor.  Samuel Rudman

6     from Robbins, Geller, Rudman and Dowd for the lead plaintiffs.

7          MR. LE JEUNE:  Good morning.  Cody LeJeune, also for

8     the lead plaintiffs.

9          THE COURT:  Good morning.

10          MR. ANGIOLILLO:  Good morning, your Honor.  Bruce

11     Angiolillo and Evan Cohen from Simpson, Thacher and Bartlett

12     for all of the defendants, save the underwriter defendants.

13          MR. LEWIS:  Your Honor, good morning.  Daniel Lewis

14     from Shearman and Sterling for the underwriter defendants.

15          THE COURT:  Good morning.  All right.  The matter is

16     on today for the approval of the distribution agreement and the

17     application for attorneys' fees.

18          Is there anyone, any members of the class, who want to

19     be heard on this?  There were no objections and there was one

20     exclusion, one opt out.  So the only people here are the

21     lawyers?  All right.  I'll listen to you.

22          MR. KAUFMAN:  Your Honor, may I approach the podium?

23          THE COURT:  Sure.

24          MR. KAUFMAN:  We're seeking a final approval today of

25     a $26 million settlement of a securities class action that we

D3EPENEC

1    are pleased to bring before the Court.  This was not the

2    typical securities class action, where there was an

3    announcement there were a large number of shareholders that

4    filed cases.  We were, in fact, the only plaintiffs to file

5    complaints in this action, and at the lead plaintiff stage,

6    only the lead plaintiffs to seek appointment as lead plaintiff.

7    There were no other cases.  There was no restatement.  There

8    was no governmental investigation.  There was no SEC

9    investigation.  The entire settlement is due to the effort of

10   lead plaintiffs and plaintiffs' counsel.

11       Another thing that sets this case apart is the

12   complexity of the legal and factual issues.  Energy Solutions

13   is a company that specializes in the nuclear waste disposal

14   business, which is highly specialized and very, very difficult

15   to understand.  As a result, in order for us to gain an

16   appreciation underlying the facts in the claim, we retained an

17   expert in the nuclear industry from the outset of this case in

18   order to help us formulate our allegations.

19       This case also presented difficult legal issues,

20   including the fact that one of the core allegations centered

21   around the defendant's opinions about whether a petition before

22   the Nuclear Regulatory Commission, an agency, would be approved

23   or not.  And we sufficiently pled those allegations and

24   provided ample support in the complaint for those.

25       This was a case that most of the lawyers likely

D3EPENEC

dismiss as not worth their time, but we took the risk.  We

stepped forward, spent the time and spent the money in order to

attempt to prosecute the claims.  We then overcame very strong

opposition from the defendants at the motion to dismiss stage.

Defendants launched a number of arguments against the

complaint.

          The complaint was sustained in most part, and we

believe we have obtained a favorable ruling from your Honor on

many issues.  An important issue was the interpretation in the

application of the recent Janus opinion, and one of the key

holdings in that application was that there could be more than

one speaker of a statement under Janus, which has already been

cited by other courts as precedent.

          At the direction of the Court at the motion to dismiss

hearing, we discussed settlement with defendants.  In December

of 2011 we attended a mediation before former federal Judge

Layn Phillips, who's a very, very experienced mediator in any

type of matters.  And even though we were there for an entire

day, we were unable to resolve the action, and then we

proceeded to aggressively litigate the case.

          We proceeded for discovery for months.  We saw

documents.  We reviewed over 600,000 pages of documents,

analyzed those documents that were produced by the defendants,

as well as numerous --

          THE COURT:  There was only one deposition taken,

D3EPENEC

1    right?

2         MR. KAUFMAN:  There was one deposition taken of Energy

3    Solutions in connection with fact discovery, and then during

4    the class certification stage, each of the lead plaintiffs was

5    deposed.

6         And then, in September 2011 -- 2012, we attended a

7    second mediation, where we made some more progress, but we were

8    still unable to settle.  But then we continued negotiations

9    after that, and then on the eve of the class certification

10   hearing, we were able to reach an agreement in principle to

11   resolve the claims.

12        We respectfully submit that the settlement is fair,

13   adequate and reasonable.  On December 3rd, 2012, the Court

14   preliminarily approved the settlement, and pursuant to the

15   Court's order, we published a notice on December 17th, 2012,

16   over the Business Wire, and on December 18th, 2012, in the

17   Investor's Business Daily.  The notice informed investors of

18   the opportunity to participate in the lawsuit and to object or

19   opt out of the lawsuit.  And we advised them of our application

20   for attorneys' fees and the reimbursement of expenses, as well

21   as reimbursements of expenses to lead plaintiffs.

22        We also mailed over 24,000 notices and claims packages

23   to class members.  And on December 14th, 2012, the claims

24   administrator posted copies of the notice, proof of claim,

25   revised settlement agreement, and the Court's preliminary

D3EPENEC

1    approval order on its website and set up a number for people to

2    ask questions.

3         The class members are extremely -- appear to be

4    extremely pleased with the settlement because there have been

5    no objections and only one class member has sought to be

6    excluded.  As such, the notice, we believe, was the best notice

7    practicable under the circumstances, and we note that the

8    notice satisfies Rule 23 and due process, and that the

9    investors were thoroughly and properly informed of the

10   settlement.

11        With respect to the factors of approval of the

12   settlement, the first is whether the settlement was

13   procedurally fair and, as a preliminary matter, due to the

14   protracted litigation, the fact that the case went on for three

15   years, we had two mediations and subsequent settlement

16   negotiations, we would establish that the settlement was

17   procedurally fair.

18        With respect to the substantive factors, your Honor is

19   aware that the Second Circuit, in the Grinnell case, has set

20   forth a number of factors which I can go through those with

21   you, if you would like.  The first is the complexity, expense

22   and likely duration of the litigation.  As I mentioned earlier,

23   this was not a typical securities class action.  It was very

24   complex, both factually and legally.  And the case was

25   litigated for an extended period of time, for three years,

D3EPENEC

1    before settlement.

2            We also participated in document discovery and

3    deposition of Energy Solutions, and we were proceeding to seek

4    additional depositions at the time the case settled.

5            The reaction to the class has been very positive.  So

6    far, preliminary numbers from the claims administrator indicate

7    that over 3,400 claims have been submitted so far, which is

8    approximately 14 percent of the notices that were mailed.  And

9    also, based upon our damage expert's analysis of the number of

10   damage shares, the claims represent approximately 41 percent of

11   the damaged shares that have already submitted claims in the

12   settlement.

13           The third factor is the state of the proceedings and

14   the amount of discovery completed.  I already provided some

15   detail about that, but the lead counsel had a clear picture at

16   the time of the settlement of the strengths and weaknesses of

17   the case and the defenses that defendants were going to

18   propose.  So it was a very, very well-informed decision to

19   settle at the time that we did.

20           The fourth factor is the risk of establishing

21   liability.  Inherent in any securities class action is a risk

22   proving liability and the same thing applied here.  While there

23   are various risks, the biggest risk to our case had to do with

24   scienter, of proving that the defendants did not believe that

25   it was likely that the NRC would approve Energy Solution's

D3EPENEC

1   petition.  And regardless of what the document said or what the

2   allegations were in the complaint, that would have ultimately

3   come down to a credibility issue at trial, which is always

4   difficult.  You never know how that's going to turn out.

5           The fifth would be the risk of establishing damages.

6   In any types of case like this, there's a risk of establishing

7   damages.  It's a battle of experts.  But, here, the stock drop

8   of Energy Solutions happened around the same time of the

9   financial crisis and the downward -- when the market lost a lot

10   of value as a result of that.  So defendants would have

11   asserted that a large portion of the damages were attributable

12   to the financial crisis and not the fraud that we allege in the

13   case.

14          And sixth would be the risk of maintaining the class

15   action through trial.  Right before we settled, class

16   certification was fully briefed.  We believe that we would have

17   obtained a favorable ruling on class certification, and that

18   lead plaintiffs would have been appointed.  However, there are

19   always risks to that.  You never know what could happen, and

20   even if the class was certified and the lead plaintiffs were

21   appointed, that could always be reversed until trial.

22          The seventh factor is the ability of the defendants to

23   obtain a judgment.  Normally, that's not a consideration, but

24   here, it actually was a consideration.  At the time that we

25   were negotiating the settlement, Energy Solutions was having a

D3EPENEC

1   lot of financial problems.  They laid off hundreds of

2   employees, their debt was downgraded, and they fired their CEO,

3   their CFO.  There was a big turnover.  They lost some major

4   business, and there was a real risk that the company could face

5   bankruptcy.

6          So it was an opportune time to settle as well.  As

7   well as, looking at the value of the settlement, we believe

8   that we obtained the most that we could obtain from this case.

9          THE COURT:  Your estimate is that the amount of the

10  settlement is 14 percent of your damages expert's best-case

11  scenario for damages?

12         MR. KAUFMAN:  Correct.  That's a best-case scenario of

13  about 186 million, which, when you compare it to other

14  settlements in this range, it's much higher.  The meaner

15  average is the 2 to 3 percent range; so this is substantially

16  higher than that.

17         THE COURT:  Well, it varies.

18         MR. KAUFMAN:  It does vary, it does.  But we believe

19  this is a very, very good settlement and that the response of

20  the class so far, the 41 percent of damaged shares, have raised

21  submitted claim forms, we believe, supports that as well.

22         And when you look at the market capitalization of the

23  company, the settlement at the time of when we settled was

24  worth approximately 10 percent of the total market

25  capitalization of Energy Solutions.

D3EPENEC

```
1          And the ninth factor is a range of reasonableness of

2     the settlement to a possible recovery.  And for all the

3     aforementioned reasons, we believe that the recovery of 26

4     million is reasonable, in light of the risk that the case would

5     be dismissed, the class may not be certified or would not be

6     certified, and that Energy Solutions could have continued its

7     downward business spiral.

8          So as a result, your Honor, we respectfully submit the

9     settlement is fair, reasonable and adequate, and we request

10    that your Honor approve the settlement.

11          THE COURT:  All right.

12          MR. KAUFMAN:  If there aren't any other questions

13    about the settlement, I'd like to move to the plan of

14    distribution.

15          THE COURT:  Okay.

16          MR. KAUFMAN:  Okay.  We also request that the Court

17    find that the plan of allocation of the settlement fund is fair

18    and reasonable and should be approved.  If the Court approves

19    the post-settlement upon completion of the claims filing

20    process, and today is the last date for class members to submit

21    claims, the net settlement fund will be distributed to members

22    of the class according to the plan of distribution.

23          The plan of distribution, which was described in

24    detail and explained in the declaration of Bjorn Steinholt, our

25    expert who put together the plan of distribution, has a
```

D3EPENEC

1    rational basis and was formulated by lead counsel in

2    consultation with Mr. Steinholt, our expert, assuring its

3    fairness and reliability.  And we believe that the plan of

4    distribution is fair and reasonable and request that it be

5    approved by the Court.

6              THE COURT:  Okay.

7              MR. KAUFMAN:  With respect to attorneys' fees, your

8    Honor --

9              THE COURT:  Before we reach the issue of attorneys'

10   fees, do the defendants want to be heard on the fairness of the

11   settlement and the plan of distribution?

12             MR. ANGIOLILLO:  Your Honor, we have nothing to add.

13             MR. LEWIS:  We have nothing to add either, your Honor.

14             THE COURT:  Okay.

15             MR. KAUFMAN:  As your Honor is aware, the Goldberger

16   factors are factors that are applied to the request for

17   attorneys' fees in a case such as this.  Many of the factors

18   overlap with those of approval of a settlement.  So what I

19   would like to do would be just to go over the factors that

20   don't overlap, if that's okay with your Honor, because we

21   essentially set forth our arguments in our papers as well.

22             First would be the time and labor expended by counsel.

23   Before I get into that, we are seeking 27 percent of the

24   settlement as attorneys' fees, in addition to the reimbursement

25   of expenses, as well plus interest, as well as reimbursement of

D3EPENEC

1      expenses for each of the lead plaintiffs.

2              As a preliminary matter, the legal fees we're seeking

3      were disclosed in the notice, and not a single class member has

4      objected or voiced any type of concern for the amount that

5      we're seeking.  And the fee was also approved by each of the

6      lead plaintiffs as set forth in each of their declarations that

7      was filed with the Court.

8              With respect to the time and labor expended by

9      counsel, we have expended time and effort pursuing this action.

10     We litigated the case before, as I mentioned, for three years,

11     and we devoted over 4,800 hours to this action.  And as

12     discussed in detail in my declaration that I submitted to the

13     Court in connection with the final approval, we conducted, even

14     before filing the complaint, an extensive investigation,

15     consulted extensively with our nuclear regulatory expert,

16     formed an investigation of confidential witnesses, numerous

17     former employees, other industry personnel, and aggressively

18     litigated the case for three years.

19             THE COURT:  But in fairness, it was still the

20     beginning of the discovery process in the sense that there

21     would have been miles to go in the litigation.  There was only

22     one deposition of the defendant.  If the case had been

23     litigated to the end and the same result obtained at the end,

24     the multiplier would have been far less, right?  Hours would

25     have been much higher, multiplier far less.

D3EPENEC

1          MR. KAUFMAN:  Well, your Honor, had the case gone

2     further -- We recognize where the case settled in the

3     litigation.  Had the case gone further, we would have sought a

4     higher percentage of legal fees.  Courts regularly award a

5     higher amount, 30 to 33 percent, and that's why we're seeking

6     27 percent.

7          THE COURT:  You're awfully close to the 30 percent and

8     you say, sure, there are cases, there are a lot of cases, which

9     award 30 percent or 33 percent.  There are also a lot of cases

10    that award 10 percent, 12 percent, depending upon what the

11    amount of the recovery is and what the multiplier is, and how

12    do you compare those two?  Right?

13         And, in short, you can come up with a litany of cases

14    that award 30 percent or 33-and-a-third percent.  You could

15    also come up with a litany of cases that award 10 percent and

16    12 percent, and you can come up with a litany of cases that

17    award a multiplier of 3 and more.  But you can also come up

18    with a litany of cases that award a much lower multiplier.

19         And ultimately the issue is, under all of the factors,

20    what's a fair and reasonable fee under all of the circumstances

21    of this case, given the amount of time that was spent on the

22    case, given the risks that counsel took on.  It was plainly a

23    contingent case.  It had great risk.  The effectiveness of

24    counsel of getting a good settlement, the lack of objections of

25    the class, the sophistication of the clients.

D3EPENEC

1          One issue for me is a multiplier of three against what
2     is a reasonable, frankly, attorney's fee.  $685 an hour, for
3     example, produces an hourly fee of over $1,800.  That is a --
4     that is a substantial fee, and that's only using your hourly
5     fee.  It's not even higher hourly fees, and the case was
6     litigated efficiently by using a lower hourly fee than a higher
7     hourly fee when I go over all of the hours.  So it's a concern.
8          MR. RUDMAN:  Judge, can I interrupt for one second,
9     and say something?
10          THE COURT:  If you must.
11          MR. RUDMAN:  Because I'm the higher hourly fee.
12          THE COURT:  I know that.
13          MR. RUDMAN:  I gave Evan the presentation because he
14     was the primary litigator on the case, but I wanted to come
15     today.  We've had many cases in front of your Honor, and I,
16     obviously, know your Honor's views on attorneys' fees.  And
17     this is -- and I think Evan said a little bit of it in his
18     presentation.  I mean, our view is here, we understand where
19     you've come out on the prior cases on multipliers, and what
20     we're seeking here in terms of that range is on the high end of
21     what your Honor's ever approved.
22          But if there's going to be a case where you should
23     approve it, your Honor, it's this case, and I'll tell you why.
24     And you've got some of it in Evan's presentation.  The 10, the
25     12 percent case, the low-multiplier case that you're referring

D3EPENEC

1    to is where there's a big case or a restatement case.  There's

2    many lawyers come in and there's a wealth of counsel willing to

3    take the case and litigate the case, and although those cases

4    had risk, they don't have the same risk that we had in this

5    case.

6        And I think the point of what Evan was saying about

7    the complexity of the case was this was a case that wasn't

8    going to be brought if our clients didn't bring it and we

9    didn't bring it.  It was also a case -- Now, you can say that

10   about a lot of cases, but then you have to look at the facts of

11   the case.  It was a case that ultimately challenged the

12   determination of a governmental agency that had nothing to do

13   with the defendants.

14       So it was an incredibly -- this was a -- Most

15   securities lawyers that would look at this case wouldn't even

16   give it the time of day because they would say, How on earth

17   could anyone know what the governmental agency, how they were

18   going to turn out.

19       And so, in my view, your Honor, it's not your typical

20   securities case.  It was highly complex, highly creative, and

21   if there's ever a case where your Honor is going to see fit to

22   reward the lawyers for pursuing a complex and difficult case, I

23   respectfully submit that this is the case.

24       THE COURT:  To allay some of your concerns, this is

25   not a case where I think that the proper percentage of recovery

D3EPENEC

1    is down at 10 and 12 percent.  It's not.  It's substantially

2    higher.  But I look at these figures very carefully.  I look at

3    the percentage.  I look at the amount of work that was done.  I

4    look at the multiplier.  I look at the different work.  I look

5    at the efficiency.

6         I look at all of that and, yes, this is a case that

7    pushes towards the higher end, but I still have trouble with

8    the precise place where you have come out, and it's my

9    responsibility to, you know, make the determination and

10   ultimately be satisfied that taking all of the factors into

11   account, the ultimate fee is the fair and reasonable fee, given

12   all of the factors.

13        And, in fact, I go one step further, where I would

14   come out with the 25 percent rather than 20 percent, which I

15   still think is towards the high end of the range, but it brings

16   the multiplier down some, and it still results in a high hourly

17   fee.

18        On the other hand, I appreciate the argument on the

19   other side, that lawyers shouldn't be encouraged to conduct a

20   case inefficiently by building up the hours for purposes of

21   bringing down the multiplier; so I understand.

22        MR. RUDMAN:  Or pushing it further than it needs to go

23   because we need to -- but, your Honor, I appreciate your

24   comments and I understand.  Sorry for interrupting.

25        MR. KAUFMAN:  Unless your Honor has additional

D3EPENEC

questions about our attorneys' fees, I respectfully request
that our 27 percent, although your Honor has expressed
25 percent, be approved.

          THE COURT:  Okay.

          MR. KAUFMAN:  Finally, with respect to reimbursement
of expenses.  We're requesting $257,889.10 in expenses incurred
while prosecuting this action.  We submitted a declaration
regarding these figures.  We're also seeking reimbursement of
expenses for lead plaintiffs.  For the Building Trades of more
than $2,100; the New England Carpenter's fund, a little more
than $2,500; and for the City of Roseville, a little more than
$1,700.

          And then one final matter is that local counsel for
New England Carpenter's Fund, a firm of Krakow and Souris,
who's not on the papers, they expended a little over $4,000
worth of time, and we would be willing to pay that out of our
attorneys' fees, if it's okay with your Honor.

          THE COURT:  Sure.

          MR. KAUFMAN:  Unless your Honor has any additional
questions about the expenses, I just want to move on to class
certification.

          THE COURT:  Okay.

          MR. KAUFMAN:  Okay.

          THE COURT:  It's class certification solely for
purposes of the settlement, right?

D3EPENEC

1           MR. KAUFMAN:  Correct, your Honor.

2           THE COURT:  So the pending motion for class

3    certification gets dismissed without prejudice as moot because

4    that was class certification for the entire action, not just

5    settlement?

6           MR. KAUFMAN:  Yes.  So we're just requesting that the

7    Court approve the class -- certified class for purposes of the

8    settlement.

9           THE COURT:  Okay.

10          MR. KAUFMAN:  And unless your Honor has any additional

11   questions, I'm finished.

12          THE COURT:  Thank you.  Do the --

13          MR. KAUFMAN:  Oh, your Honor, one housekeeping matter.

14   We submitted an order in connection with the attorneys' fees,

15   which we believe that when, as we were preparing for the

16   hearing, it appeared that you didn't like that type of order in

17   another case.

18          THE COURT:  It was very good.  I've taken your order,

19   and I've crossed out all of the --

20          MR. RUDMAN:  The same language you crossed out the

21   last time, Judge?

22          THE COURT:  -- all the pans to what a great job you've

23   done and how sophisticated the defense lawyers were and --

24          MR. ANGIOLILLO:  Excuse me, your Honor, may I be heard

25   on that?

D3EPENEC

1          MR. RUDMAN:  We brought a clean one because we

2     realized we made a mistake.

3          THE COURT:  Oh, okay.  I've marked it all up.

4          MR. RUDMAN:  That's okay.

5          MR. KAUFMAN:  Okay.

6          MR. RUDMAN:  Thank you.

7          MR. KAUFMAN:  Thank you, your Honor.

8          THE COURT:  I may not have crossed out all of the same

9     things.

10          All right. I'll sign the final judgment.  This is a

11     fair and reasonable settlement.  It's procedurally fair.  The

12     recitations in the final judgment are correct.  It was

13     negotiated by experienced counsel at arm's length with the

14     assistance of a mediator.  There had been substantial

15     litigation, including a motion to dismiss, a fully briefed but

16     undecided motion for class action certification.  There was a

17     great deal of documentary discovery.

18          The settlement was substantively fair.  The case was

19     complex.  It's significant that there were no objections from

20     class.  The lead plaintiffs are sophisticated investors and no

21     other members of the class objected and only one individual

22     opted out.  That's a substantial approval record on behalf of

23     the class.

24          There were risks in the case.  Some of the case was

25     dismissed on the motion to dismiss and the remaining issues in

D3EPENEC

the case were always subject to the reasonable risks of

litigation.  The recovery is 14 percent of the damages

estimated, best-case damages estimated by the plaintiff's

counsel, which is a reasonable recovery.  There's an advantage

to the payment now; so that procedurally and substantively this

is a fair and reasonable result.  The notice to the class was

the best notice reasonably possible, and the plan of

distribution is fair.

I've already indicated that with respect to attorneys'

fees, this is a case where a percentage of recovery is

reasonable.  25 percent is a reasonable recovery.  There are

recoveries higher; there are many recoveries lower.  It

certainly depends upon the amount of the recovery, the stage in

the litigation, and the other factors that I already indicated.

As counsel indicated, this is higher than the percentage

recovery that I've done in some other cases.

On the other hand, the case was efficiently litigated

and the plaintiffs are sophisticated.  No plaintiff has

objected to the settlement, the percentage.  It was in the

notice so that anyone could object to the size of the recovery

for the attorneys' fees.

There are some factors which would indicate that the

percentage recovery should be towards the higher end of the

percentage of recovery, including the difficulty of the case,

the fact that there was no prior government investigation, the

D3EPENEC

1     fact that there were no other competing plaintiffs for this

2     particular case, the reasonableness of the settlement, the

3     efficiency with which it was conducted.

4             25 percent brings the lodestar down to somewhat under

5     3, which is a fair load -- a fair multiplier on the number of

6     hours times the rates.  I appreciate the Court of Appeals

7     doesn't like the term lodestar; so hours times rates, and as

8     counsel has already appreciated, I've already marked up the

9     order to reflect the factors that went in to arriving at the

10    amount.

11            Let me ask counsel one question.  Giving a percentage

12    of 25 percent, there's no -- I believe I caught all the 27

13    percents.  Plaintiff counsel sought 27 percent.  I'll order

14    25 percent.  There's no actual calculation of the 27 percent,

15    right, at any point?

16            MR. KAUFMAN:  I don't believe so, your Honor.

17            THE COURT:  Okay.  You're welcome to look at the

18    order.

19            MR. KAUFMAN:  Your Honor, paragraph 6 we have

20    identified 27 percent twice, and paragraph 8E there's a

21    27 percent, and paragraph 8F there's a 27 percent.

22            THE COURT:  I'm sorry, hold on.  Yes, 8E and?

23            MR. KAUFMAN:  F.

24            THE COURT:  8F.

25            MR. KAUFMAN:  And then there was the multiplier amount

D3EPENEC

1    in 8F.

2              THE COURT:  Yes, I've crossed that out.

3              MR. KAUFMAN:  And also paragraph 4 on Page 1.

4              THE COURT:  No, that still stays.  That was as sought.

5              MR. KAUFMAN:  Okay.

6              THE COURT:  All right.  I've signed the orders.

7    Anything else?

8              MR. KAUFMAN:  Not from plaintiffs, your Honor.

9              THE COURT:  Okay.  I'll make copies so that you can

10   have them now rather than waiting for them to go up on EFC.

11   They'll go up on ECF later today.  Okay.  Good morning, all.

12             MR. KAUFMAN:  Thank you, your Honor.

13             (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25